Patricia Lynn PATTERSON, Appellant,

v.

The STATE of Texas, State.

No. 2–91–215–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 19, 1992.

Hardy Burke, Denton, for appellant.

Bruce Isaacks, Crim. Dist. Atty., David C. Colley, Vicki Foster, and Lisa Decker, Assts., Denton, for State.

Before WEAVER, C.J., and MEYERS and DAY, JJ.

## OPINION

MEYERS, Justice.

Appellant, Patricia Lynn Patterson, was found guilty by a jury of the offense of injury to a child. *See* TEX.PENAL CODE ANN. § 22.04(a)(2) and (b)(1) (Vernon Supp.1992). The court assessed punishment at forty-nine years confinement in the Texas Department of Criminal Justice, Institutional Division.

In two points of error, appellant contends the trial court erred: in overruling appellant's motion to suppress oral statements made by her to a police officer; and in admitting photographs of the victim because the prejudicial effect of the photographs outweighed their probative value, and the State failed to prove the proper predicate for introduction of the evidence.

We affirm.

In her first point of error, appellant asserts that certain oral statements made by her to a police officer were the result of custodial interrogation, and were inadmissible because the State did not comply with TEX.CODE CRIM.PROC.ANN. art. 38.21 (Vernon 1979) and art. 38.22, § 3(a) (Vernon Supp. 1992). Article 38.21 provides that "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." Article 38.22, section 3(a) specifies that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless a recording is made of the statement, and prior to the statement but during the recording the accused is given certain statutory warnings.

The Supreme Court has stated that "custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).

■ At a hearing outside the presence of the jury, appellant objected to the introduction into evidence of her oral statements to the police officer, on the basis of noncompliance with articles 38.21 and 38.22. The trial court found appellant's statements were voluntary, and overruled her objections. At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App.1990). Absent an abuse of discretion, the trial court's findings at a suppression hearing should not be disturbed on appeal. *Id.*

Appellant does not challenge the sufficiency of the evidence; therefore, we will only recite sufficient facts so as to enable us to dispose of appellant's points of error. The evidence established that appellant was the primary caretaker for her infant son. On September 14, 1989, Child Protective Services, the state agency assigned to investigate possible abuses to children, was notified that appellant's son appeared to be deteriorating—he was alleged to be losing weight and was not responding in an alert manner. On September 19, 1989, a caseworker located appellant and investigated the complaint. The caseworker examined the seven-week-old infant, and testified that the infant's skin "was very loose and hanging. He was very frail. He was pale. His face had the appearance of an older man with the skin hanging.... He had reddened area in the diaper—he did have diaper rash ... [a]nd his stomach was bloated." The child was taken to a pediatrician the next day, and was immediately hospitalized for five days. The treating pediatrician's diagnosis of the child's condition was: severe malnutrition; failure to thrive due to severe malnutrition or associated with this condition; and possible parental neglect.

On September 28, 1989, Officer Jay Seiler of the City of Denton Police Department, was assigned to the juvenile section of the criminal investigation division. On that day, Officer Seiler telephoned appellant and asked if she would come down to the police department to discuss the reason her child had been hospitalized. Officer Seiler testified that when appellant arrived at the police department she was not under arrest, and she was free to leave at any time. Appellant arrived with her mother, who was not present at the interview. Officer Seiler took appellant into his office, and read her *Miranda* rights to her. Appellant appeared to understand these rights, and at no time during the interview did she invoke any of these rights. Appellant was not asked to sign a written waiver of her *Miranda* rights. The officer testified that at some point during the interview he informed appellant that she was a possible suspect in an offense he was investigat-

ing. The interview lasted fifteen or thirty minutes, after which appellant terminated the interview and left the police station. Officer Seiler did not record the interview in any way, except by making some notes to himself. During the interview, appellant gave some explanations about how she had been caring for her son, and why he had become so malnourished. These explanations were the subject of appellant's motion to suppress.

The Texas Court of Criminal Appeals in *Meek* recited the various relevant factors that had previously been applied in reviewing whether a defendant was the subject of custodial interrogation at the time the defendant made a statement. *See Meek*, 790 S.W.2d at 621–22. We find these factors instructive in our determination of whether the statements made by appellant to Officer Seiler at the police station were made as the result of custodial interrogation.

> Although we have used several approaches to determine whether "custody" exists, we have always considered multiple factors. One approach merges the idea of "focus" with the idea of "whether a reasonable person would believe that his freedom was being deprived in a significant way." *Shiflet v. State*, 732 S.W.2d 622, 624 (Tex.Cr.App. 1985). Another approach cites four factors as relevant to the inquiry: "probable cause to arrest, subjective intent of the police, focus of the investigation, and subjective belief of the defendant." *Wicker v. State*, 740 S.W.2d 779, 786 (Tex.Cr.App.1987), *cert. den.*, *Wicker v. Texas*, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988); *Payne v. State*, 579 S.W.2d 932, 933 (Tex.Cr.App.1979).

*Id.*

In *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam), the police contacted a possible burglary suspect who agreed to meet with the police officer, who suggested a meeting at the police station. As in the instant case, the defendant voluntarily traveled to the police station where he gave a statement. The Court found the statement to be admissible, stating:

[T]here is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a ½–hour interview respondent did in fact leave the police station without hindrance.

*Id.* at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719. The Court concluded that "[i]t is clear from these facts that Mathiason was not in custody 'or otherwise deprived of his freedom of action in any significant way.'" *Id.*

Further, as stated in *Dancy v. State,* 728 S.W.2d 772 (Tex.Crim.App.), *cert. denied,* 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987):

Where a person voluntarily accompanies police officers, who are then only in the process of investigating a crime, to a certain location, and he knows or should know that the police officers suspect he may have committed or may be implicated in committing the crime, we are unable to hold that under the circumstances such a person is restrained of his freedom of movement. Under those circumstances, he is not in custody.

*Id.* 728 S.W.2d at 778–79 (citations omitted).

■ Appellant maintains that the fact that Officer Seiler read appellant her *Miranda* warnings is additional support for appellant's argument that her statement was the result of custodial interrogation. However, "mere recitation of such warnings is more indicative of proper cautiousness than it is of the officer's intent to arrest." *Id.* at 777 (citations omitted).

Appellant did not testify at any phase of the trial proceedings. She did not present any evidence showing she believed that she was in custody at the time she made the statements, nor did she present any evidence which contradicted Officer Seiler's testimony. Applying all the relevant factors, we find appellant was not in custody at the time she made the complained-of statements to Officer Seiler. Accordingly, the trial court did not abuse its discretion in admitting the statements. Appellant's first point of error is overruled.

■ In her second point of error, appellant claims the trial court erred in admitting photographs of the infant taken on September 20, 1989, when he was admitted to the hospital. The State introduced the photographs through Carmen Estes, the caseworker who investigated the allegations of neglect. Appellant initially argues that the State failed to lay the proper predicate for the photographs because Estes stated she was not present when the photographs were taken. Estes testified the photographs accurately depicted the infant's condition on September 20, 1989. Estes had previously testified, without objection, about her own observations concerning the infant's physical appearance on September 19, 1989. A photograph is competent evidence of any subject about which a witness's description is proper. *Barefield v. State,* 784 S.W.2d 38, 46 (Tex.Crim. App.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990). In other words, if a verbal description of the item is admissible, a photograph depicting the same is also admissible. *Id.; Martin v. State,* 475 S.W.2d 265, 267 (Tex.Crim.App.) (opinion on reh'g), *cert. denied,* 409 U.S. 1021, 93 S.Ct. 469, 34 L.Ed.2d 312 (1972). The witness who verifies a photograph need not be the photographer, nor need the witness testify as to the way the photograph was made. *DeLuna v. State,* 711 S.W.2d 44, 46 (Tex.Crim.App.1986). It is not even necessary that the witness was present when the photograph was taken. *Id.*

We find the State established the proper predicate for introduction of the photographs, and the fact that Estes was not present when the photographs were taken does not affect the exhibits' admissibility.

■ Appellant next contends the photographs should not have been admitted because their probative value was substantially outweighed by the danger of unfair prejudice to appellant. In support of her argument, appellant cites TEX.R.CRIM.EVID. 403 which provides:

Although relevant, evidence may be excluded if its probative value is substan-

tially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

*Id.*

■ The admission into evidence of photographs is within the discretion of the trial court, who determines whether they serve a proper purpose in the enlightenment of the jury. *Burdine v. State,* 719 S.W.2d 309, 316 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Only when the probative value of the photograph is very slight, and the inflammatory nature of the photograph is very great, will there be an abuse of discretion in the admission of the photograph. *Williams v. State,* 773 S.W.2d 525, 539 (Tex.Crim.App.1988), *cert. denied,* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989).

In the instant case, the State was required to prove that appellant did "knowingly and intentionally by omission engage in conduct that caused serious physical deficiency to [her infant son] ... by then and there failing to provide medical care and food." The infant's physical condition at the time he was hospitalized was clearly relevant to the allegations against appellant, and the photographs taken at the time of his hospitalization had definite probative value.

■ In deciding whether photographs are prejudicial, the court should consider: their gruesomeness, detail, and size; whether they are black and white or color; whether they are close-up; whether the body is naked or clothed; and factors unique to each situation photographed. *Goodwin v. State,* 799 S.W.2d 719, 739 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991).

Numerous cases have upheld the admission of very gruesome photographs that were decidedly more prejudicial than those in the instant case. *See id.* 799 S.W.2d at 738–39; *Williams,* 773 S.W.2d at 538–39; and *Martin,* 475 S.W.2d at 267.

We find that the probative value of the photographs in the instant case was not substantially outweighed by the danger of unfair prejudice to the appellant. The trial court did not abuse its discretion in admitting the photographs into evidence. Appellant's second point of error is overruled.

The trial court's judgment is affirmed.