TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00554-CR






Carey Lynn Smith Dusek, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. CR-95-0177, HONORABLE JACK ROBISON, JUDGE PRESIDING







A jury found appellant guilty of two counts of intentionally or knowingly, by omission,
causing serious bodily injury to a child. Tex. Penal Code Ann. § 22.04(a)(1) (West 1994). For each
count, the jury assessed punishment at imprisonment for fifteen years. Appellant challenges the legal and
factual sufficiency of the evidence, and complains of error in the charge and in the admission of evidence. (1) 
We will reverse appellant's conviction under one of the two counts and render a judgment of acquittal. As
to the other count, we will modify the judgment to reflect a conviction for a lesser included offense and
remand the cause to the district court for reassessment of punishment.


Background.

On December 19, 1994, appellant was living in a small trailer house with her four children,
the oldest of whom was four years old, and John Fitch, her fiancé. (2) That morning, appellant took her two-year-old son Billy Smith to the emergency room at Brackenridge Hospital in Austin. She told medical
personnel, and later a police officer and a child protective services worker, that the boy had fallen while
she was bathing him and she feared that he had broken his leg. The boy also had a bruise on his forehead,
and his trunk and legs were covered with bruises and scratches of varying ages. There were multiple
lesions, some weeping and some crusted over, on his penis and groin. The child was extremely dirty and
smelled of urine. His head was covered with lice and fleas. Photographs of the boy taken after his
admission to the hospital were introduced in evidence and appear in the record.

Dr. Archie Whittemore, the orthopedic surgeon who treated Billy, testified that the boy
had an oblique fracture of the left femur. The doctor said that the fracture was caused by a direct blow to
the side of the leg. Although he did not describe the amount of force required to cause such a fracture, the
doctor did testify that the injury was unlikely to have been caused by a fall of the sort described by
appellant. Whittemore also testified that Billy had a "flat affect" when examined at the hospital, meaning
that "he was not smiling, he had no facial expressions." The doctor said that this was unusual for a child
who had experienced an injury such as a broken femur, but that he had seen this before in cases of child
abuse. The doctor was asked whether the bruising on Billy's body was indicative of child abuse, but he
expressed no opinion.

Nurse Carloyn Rehbein examined Billy after his admission to the hospital and also
interviewed appellant. She testified that appellant "was quiet, didn't appear to me very concerned about
the child, didn't ask what the procedures would be, what would happen to him, what we were going to do
with him physically or if he was going to be okay." Based on the child's physical condition and the
implausible explanation appellant gave for the broken leg, Rehbein had no doubt that the boy was the victim
of child abuse.

Deputy Michael Chance spoke to appellant in jail following her arrest. Chance testified,
"She appeared upset. She appeared distraught. She indicated to me that she wanted to talk to me about
the abuse, and she eventually told me that her boyfriend, John Fitch, was the one who, in fact, did break
[Billy's] leg." Chance added, "She told me that he was impatient and got upset with Billy frequently, got
angry." Chance also testified that he had received professional training regarding child abuse and that, in
his opinion, the bruising on Billy's body showed a pattern of child abuse.

Janet Clayton, a child protective specialist with the Department of Protective and
Regulatory Services, investigated this case. Based on her training and experience, she was of the opinion
that Billy was the victim of child abuse. She added that the department's computer records indicated that
appellant had previously been investigated for alleged neglect of her oldest child, but she did not testify to
the result of that investigation.

Appellant testified that she heard a noise shortly after Fitch left for work. She went to the
children's bedroom, where she found Billy lying on the floor crying. She took Billy to the bathroom to clean
him where, on closer examination, she noticed that his leg "looked very strange and wobbly." Appellant
did not immediately summon aid because she did not have a telephone or car, and the nearest pay phone
was a twenty-minute walk from her house. A short time later appellant's sister, Samantha Sammons,
arrived and was told about Billy's injury. She immediately drove to the pay phone and called their father,
a former police officer and army medic. He advised her to stabilize the boy's leg and take him to the
hospital. After Sammons returned to appellant's trailer, the two women wrapped Billy in a blanket, placed
him and the other children in Sammons's car, and drove to the hospital.

Appellant admitted that she lied at the hospital, and said she did so because she was
frightened. She said that hospital workers and police officers had immediately accused her of child abuse
and would not let her see her child. Both appellant and her sister testified that an officer told them that he
was going to interview them separately, and that they would be prosecuted for perjury if their stories were
not consistent. The sisters decided to say that Billy fell in the bathroom because Sammons had already told
the officer that the boy was in the bathroom when she arrived.

Appellant testified that she knew Billy had head lice and that she had purchased medication
to treat the condition. Because she was then pregnant with her fifth child, she could not apply the
medication herself. She said the lesions on Billy's penis and groin were the result of a severe diaper rash
that had become infected. He had been seen by a doctor, who had prescribed an ointment for the rash and
oral medicine for the infection. Appellant attributed some of the bruises on Billy's body to rough play with
his siblings. She explained that his legs were bruised when, a few days earlier, one of the other children
closed a car door on them. Appellant testified that neither she nor Fitch hit or otherwise abused Billy and
that she had no personal knowledge of how Billy's leg was broken. She denied telling Chance that Fitch
injured her son.

Appellant's testimony was confirmed by other defense witnesses. Appellant's sister
testified that she had been intimidated at the hospital and had advised appellant to tell the false story about
how Billy's leg was broken. Both she and Pam Hitch, a friend with whom appellant and her children had
once lived, testified that appellant's children were active and difficult to control, and were always fighting. 
Fitch's mother testified that she witnessed the incident in which Billy's sister closed the car door on his leg. 
All the defense witnesses testified that they never saw either appellant or Fitch hit or otherwise abuse
appellant's children. Fitch also testified and denied injuring Billy.

The indictment contained three counts accusing appellant of intentionally and knowingly
causing serious bodily injury to Billy by fracturing his leg (count one); intentionally and knowingly, by
omission, causing serious bodily injury to Billy by failing to remove him from the presence of John Fitch,
when she knew he was a threat to the child's safety (count two); and intentionally and knowingly, by
omission, causing serious bodily injury to Billy by failing to provide medical care (count three). The district
court submitted all three counts to the jury, together with the lesser included offenses of reckless and
negligent injury to a child. The jury acquitted appellant under count one, but found her guilty as indicted
under counts two and three.


Sufficiency of evidence.

Appellant contends the evidence is both legally and factually insufficient to sustain the jury's
guilty verdicts. In a legal sufficiency review, the question is whether, after viewing all the evidence in the
light most favorable to the verdict, any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820
S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). In a
factual sufficiency review, the evidence is not viewed in the light most favorable to the verdict. Instead, all
the evidence is considered equally, including the testimony of defense witnesses and the existence of
alternative hypotheses. Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). A
verdict will be set aside for factual insufficiency only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed).

Count three. Under this count, the State had the burden of proving beyond a reasonable
doubt that appellant intentionally or knowingly caused serious bodily injury to Billy by failing to provide
medical care that she had a legal or statutory duty to provide. Penal Code § 22.04(a), (b)(1). Appellant
does not dispute that as Billy's mother, she had a legal duty to provide him medical care.

Billy had four distinct conditions when he arrived at the hospital: (1) head lice and fleas,
(2) lesions on his penis and groin, (3) bruises and scratches on his body, and (4) a broken femur. There
is no evidence that the first three conditions, either individually or collectively, created a substantial risk of
death, or caused serious permanent disfigurement or protracted loss or impairment of any bodily member
or organ. See Tex. Penal Code Ann. § 1.07(46) (West 1994) (defining "serious bodily injury"). The
orthopedic surgeon who treated Billy testified that the child's leg was in traction for a week, and that he
wore a cast covering his lower body for six weeks. The doctor was of the opinion that the broken femur,
if untreated, would have healed in an abnormal position, resulting in a deformity of the leg that would have
impaired its function. This testimony supports a finding that the broken leg was a serious bodily injury. See
Brown v. State, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980).

As expressed in the prosecutor's jury argument, the State's theory under count three was
that appellant intentionally or knowingly failed to obtain prompt medical treatment for Billy's broken leg. 
Injury to a child, however, is a "result of conduct" offense. Alvarado v. State, 704 S.W.2d 36, 39 (Tex.
Crim. App. 1985); Beggs v. State, 597 S.W.2d 375, 377 (Tex. Crim. App. 1980). Under section 22.04
and the allegations of count three, it was not sufficient for the State to prove that appellant failed to provide
medical care for a serious bodily injury. Instead, it was necessary to prove that Billy suffered a serious
bodily injury because appellant failed to provide him medical care. The State clearly did not meet this
burden.

There is no evidence in the record either that appellant failed to obtain needed medical care
for Billy's preexisting conditions (the lice, lesions, and bruises) or that any such failure caused Billy's broken
leg. There also is no evidence that appellant failed to obtain medical treatment for Billy's broken leg or that
any omission on appellant's part aggravated the seriousness of the injury. The State's medical witnesses
did not testify that Billy's leg appeared to have been broken for an unusual period of time or otherwise
suggest that treatment had been delayed, nor did they testify that Billy's recovery from the injury was in any
way hindered by a delay in receiving medical care. Although appellant admitted lying to the doctor and
nurse regarding the cause of Billy's broken leg, there is no evidence that these misstatements affected the
course or outcome of Billy's treatment. Even when the evidence is viewed in the light most favorable to
the State, no rational jury could find beyond a reasonable doubt that appellant seriously injured her son by
failing to provide him medical care.

Count two. Under this count, the State had the burden of proving beyond a reasonable
doubt that appellant intentionally or knowingly caused serious bodily injury to Billy by failing to remove him
from the presence of John Fitch when she knew that Fitch was a threat to the health and safety of the child
and when she had a legal or statutory duty to act. Penal Code § 22.04(a), (b)(1). Again, appellant does
not dispute that she had a legal duty to protect Billy from known threats to his health and safety. There also
is no question that the broken femur was a serious bodily injury.

Appellant told Chance that Fitch broke Billy's leg. She also told the deputy that Fitch "was
impatient and got upset with Billy frequently, got angry." Fitch was the only adult other than appellant living
with Billy, and Billy's injury was discovered shortly after Fitch left for work. The many bruises on Billy's
body, and their varying ages, support the inference that Fitch's anger had previously resulted in physical
abuse. This inference was corroborated by the testimony of the doctor, nurse, and protective services
worker, each of whom testified that the child appeared to have been abused. The number and size of the
bruises were such that appellant could not have failed to notice them. When viewed in the light most
favorable to the jury's verdict, this evidence supports both a finding that Fitch broke Billy's leg and a finding
that appellant knew that Fitch was a threat to Billy's safety.

The question remains whether the State proved that appellant failed to remove Billy from
Fitch's presence either with the conscious objective or desire to cause serious bodily injury to the boy or
with an awareness that serious bodily injury was reasonably certain to result. See Tex. Penal Code Ann.
§ 6.03(a), (b) (West 1994) (defining "intentionally" and "knowingly"). With respect to "result of conduct"
offenses such as injury to a child, there is little difference between intentional and knowing conduct.


In the context of a result-type offense . . . the distinction between knowing and
intentional is narrow, and is preserved only because of the criminal law's traditional
creation of specific intent offenses such as burglary, arson, and theft. We say "only"
because there is little difference, in terms of blameworthiness, between one who wills a
particular result and one who is willing for it to occur-- between, for example, one . . .
who shoots into a moving car, intending to kill the driver, and one who shoots into a
moving car he knows is occupied. The formulated distinction between intentional and
knowing, as to results, is thus between desiring the result and being reasonably certain that
it will occur.



Seth S. Searcy III & James R. Patterson, Practice Commentary, Tex. Penal Code Ann. § 6.03 (West
1974). Proof of knowing conduct requires more than a showing that the defendant was aware of but
consciously disregarded a substantial and unjustifiable risk that the result would occur. See Penal Code
§ 6.03(c) (defining "recklessly").

By her own admission, appellant knew that Fitch was frequently impatient and angry with
Billy. The jury also had before it evidence, including photographs, that Billy's body was covered by many
large bruises of varying age, and we have held that the jury could rationally conclude that appellant knew
that Fitch was physically abusing Billy. On the other hand, there is no direct evidence that appellant herself
abused Billy physically, and the jury acquitted her of the accusation that she broke Billy's leg. The nurse
testified that appellant appeared to be disinterested in Billy's condition, but there is no evidence that she
failed to obtain prompt medical care for the child.

In Galvan v. State, 699 S.W.2d 663, 671 (Tex. App.--Austin 1985, pet. ref'd), a child
died from a combination of malnutrition, trauma, untreated illness, and general neglect. This Court affirmed
the parents' convictions for intentional or knowing injury to the child, concluding that the parents could not
have allowed the child to reach the condition he was in at the time of death without having the conscious
objective or desire to do so. The evidence in this cause, even when viewed in the light most favorable to
the verdict, is not so extreme. There is no evidence that Fitch had ever before seriously injured Billy. 
Billy's condition before his leg was broken, while indicative of neglect and abuse, was not shown to be a
serious threat to his health. The circumstances do not support an inference that appellant failed to remove
Billy from Fitch's presence with the conscious objective or desire to cause serious bodily injury to her child. 
Moreover, on this record, no rational trier of fact could conclude beyond a reasonable doubt that appellant,
however misguided her conduct, failed to remove Billy from Fitch's presence knowing to a reasonable
certainty that Fitch would inflict serious bodily injury to her child.


The district court's charge authorized appellant's conviction for the lesser included offense
of recklessly causing serious bodily injury to Billy Smith by failing to remove him from Fitch's presence. 
See Tex. Code Crim. Proc. Ann. art. 37.09(3) (West 1981) (lesser offense is included within charged
offense if only difference is less culpable mental state). Having convicted appellant of intentionally or
knowingly injuring her son by omission, the jury necessarily found that her omission was reckless. See Tex.
Penal code Ann. § 6.02(e) (West 1994) (proof of higher degree of capability constitutes proof of lesser
degree). We may modify the district court's judgment to reflect a conviction for the lesser offense if the
evidence supports it. Bigley v. State, 831 S.W.2d 409, 415 (Tex. App.--Austin 1992), aff'd, 865
S.W.2d 26, 28 (Tex. Crim. App. 1993); see Thorpe v. State, 831 S.W.2d 548, 552 n.1 (Tex.
App.--Austin 1992, no pet.); Tex. R. App. P. 43.2(b), (c). (3) We now address that question.

We have summarized in detail all the evidence before the jury. While the evidence is legally
insufficient to sustain the jury's conclusion that appellant failed to remove Billy from Fitch's presence with
either the intent or knowledge that serious bodily injury would result, the evidence, when viewed in the light
most favorable to the prosecution, does support a finding beyond a reasonable doubt that appellant
consciously disregarded a substantial and unjustifiable risk of such injury. See Penal Code § 6.03(c). 
Further, appellant's disregard of the risk was shown to be a gross deviation from the standard of care than
an ordinary person would exercise under the circumstances as viewed from appellant's standpoint. Id. 
We therefore conclude that the evidence is legally sufficient to support appellant's conviction for the lesser
included offense of recklessly causing serious bodily injury to Billy Smith by failing to remove him from the
presence of John Fitch when she knew that Fitch was a threat to the health and safety of the child and when
she had a legal or statutory duty to act. 

The evidence is also factually sufficient to sustain a conviction for the lesser included
offense. In their trial testimony, both appellant and Fitch denied that Fitch broke Billy's leg. Appellant
implied in her testimony that Billy broke his leg in a fall from his bed. Appellant and the other defense
witnesses offered innocent explanations for Billy's bruises and lesions, and for appellant's admitted lies at
the hospital. The State's witnesses, on the other hand, testified that Billy's leg was unlikely to have been
broken in a simple fall and were of the opinion that Billy was the victim of physical abuse. It was for the
jury, as trier of fact, to decide the credibility of the witnesses and the weight to give their testimony. When
conducting a factual sufficiency review, we must be deferential to the jury's findings so as to avoid
substituting our judgment for that of the fact finder. Cain v. State, No. 1525-96, slip op. at 6 (Tex. Crim.
App. Dec. 18, 1997); Clewis, 922 S.W.2d at 133. While appellant presented probative evidence that
she did not cause serious bodily to Billy by failing to remove him from Fitch's presence, there is other
probative evidence that she did. Obviously, the jury did not believe the exculpatory defense testimony. 
We cannot conclude on this record that a conviction for reckless injury to a child would be so contrary to
the overwhelming weight of the evidence as to be manifestly wrong and unjust. 

With respect to the conviction under count three, we sustain appellant's challenge to the
legal sufficiency of the evidence (point of error four) and do not reach appellant's challenge to the factual
sufficiency (point of error three). With respect to the conviction under count two, we conclude that the
evidence is legally insufficient to support the jury's verdict, but is both legally and factually sufficient to
support a conviction for the lesser included offense of reckless injury to a child.


Photographs.

Appellant contends the district court erred by admitting in evidence the photographs of
Billy taken at the hospital. The photographs show the boy's broken leg as well as the various bruises,
scratches, and lesions that covered his body. Appellant contends the bruises, scratches, and lesions were
evidence of inadmissible extraneous offenses. Tex. R. Crim. Evid. 404(b). She also contends the State
failed to give notice of its intent to introduce this evidence as required by rule 404(b). Finally, appellant
urges that the probative value of these photographs was substantially outweighed by the danger of unfair
prejudice. Tex. R. Crim. Evid. 403.

Appellant did not object to Nurse Rehbein's testimony describing Billy's condition when
he arrived at the hospital. Evidence that the boy was filthy and covered by bruises, scratches, and lesions
was clearly relevant to show that appellant was guilty of the omissions alleged in counts two and three. 
Patterson v. State, 836 S.W.2d 787, 791 (Tex. App.--Fort Worth 1992, pet. ref'd). Billy's condition
as shown in the photographs was not foreign to or beyond the offenses alleged in counts two and three, and
in that sense was not evidence of extraneous misconduct by appellant. See McDonald v. State, 692
S.W.2d 169, 173 (Tex. App.--Houston [1st Dist.] 1985, pet. ref'd). To the extent the photographs
suggested that appellant engaged in acts of physical abuse against her son not alleged in count one of the
indictment, they constituted "same transaction contextual evidence" so intermixed and connected with the
offense alleged in that count as to make it impossible to prove the latter without also proving the former. 
See Rogers v. State, 853 S.W.2d 29, 33-34 (Tex. Crim. App. 1993). Moreover, any error with respect
to count one was rendered harmless by the jury's verdict of acquittal. See Tex. R. App. P. 44.2(b).

Assuming appellant was entitled to advance notice of the State's intent to introduce the
photographs pursuant to rule 404(b), the record affirmatively reflects that she received it. One week before
trial began, appellant filed a motion to suppress "[a]ll photographs of [Billy], subsequent to the discovery
of injuries to his body." It is obvious from this motion that appellant both knew of the photographs and of
the State's intent to offer them in evidence. Rule 404(b) does not require that notice be given in any
particular manner. Neuman v. State, 951 S.W.2d 538, 540 (Tex. App.--Austin 1997, no pet.). We
conclude that appellant had reasonable advance notice of the State's intent to introduce the photographs.

Finally, the district court did not err by concluding that the probative value of the
photographs outweighed any unfair prejudice to appellant. If a verbal description is admissible, a
photograph showing the same facts is generally admissible. Long v. State, 823 S.W.2d 259, 270 (Tex.
Crim. App. 1991). Billy's condition when he arrived at the hospital, as described by the State's witnesses
and documented in the challenged photographs, was crucial evidence that appellant failed to protect Billy
or obtain medical treatment for him. Given the State's need for the evidence, the district court did not
abuse its discretion by overruling appellant's rule 403 objection. See Montgomery v. State, 810 S.W.2d
372, 390-93 (Tex. Crim. App. 1991) (opinion on rehearing); Patterson, 836 S.W.2d at 791. For the
reasons stated, point of error one in appellant's original brief and point of error six in the supplemental brief
are overruled.


Charge error.

Finally, appellant contends the district court erred by changing its jury charge at the guilt
phase of trial after deliberations had begun and over objection. The charge submitted to the jury defined
"knowingly" twice. The jury was first instructed, "A person acts knowingly or with knowledge, with
respect to a result of his conduct when it is his conscious objective or desire to cause the result." The
charge then continued, "A person acts knowingly or with knowledge, with respect to a result of his conduct
when he is aware that his conduct is reasonably certain to cause the result." The second definition was
correct, but the first was incorrect. See Penal Code § 6.03(b). This error came to the court's attention
when the jury, apparently confused, wrote a note asking if both definitions had to be satisfied. In response,
the court submitted a supplemental charge instructing the jury to disregard the quoted definitions and giving
them the full definition of "knowingly" found in section 6.03(b).

"After the argument begins no further charge shall be given to the jury unless required by
the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion,
permit the introduction of other testimony ...." Tex. Code Crim. Proc. Ann. art. 36.16 (West 1981). 
Despite this language, the Court of Criminal Appeals has consistently held that a trial court may withdraw
and correct its charge if convinced an erroneous charge has been given. Smith v. State, 898 S.W.2d 838,
854-55 (Tex. Crim. App. 1995); see Smith v. State, 635 S.W.2d 591 (Tex. App.--Dallas 1982, no
pet.). The district court did not err by overruling appellant's objection and correcting the erroneous
instruction. (4) Point of error two in the original brief and point of error five in the supplemental brief are
overruled.


Disposition.

The district court prepared a separate judgment for each count. The judgment of
conviction under count two is modified to reflect a conviction for the lesser included offense of recklessly
causing serious bodily injury to a child by omission. As modified, the judgment is affirmed as to the
adjudication of guilt. Causing serious bodily injury to a child is a first degree felony when committed
intentionally or knowingly, but a second degree felony when committed recklessly. Penal Code § 22.04(e). 
While the punishment assessed by the jury, imprisonment for fifteen years, is within the range prescribed
for a second degree felony, we cannot assume the jury would have assessed the same punishment for the
lesser offense. Lockett v. State, 874 S.W.2d 810, 818 (Tex. App.--Dallas 1994, pet. ref'd); see Moss
v. State, 574 S.W.2d 542, 545 (Tex. Crim. App. 1978) (opinion on rehearing). Therefore, that portion
of the modified judgment assessing punishment is reversed and the cause is remanded for a new trial as to
punishment. Tex. Code Crim. Proc. Ann. art. 44.29(b) (West Supp. 1998).

We reverse the judgment of conviction under count three and render a judgment of
acquittal.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Count Two: Modified and, as Modified, Affirmed in Part; Reversed and Remanded in Part

Count Three: Reversed and Rendered

Filed: February 20, 1998

Publish

1. The attorney first appointed to represent appellant on appeal filed a brief raising the latter points of
error in June 1997. In October, after the appeal was under submission, the district court appointed
substitute counsel who moved to amend and supplement appellant's brief. The motion was granted, and
the supplemental brief was filed in December. The supplemental brief repeated the two points raised in the
original brief, and added the points challenging the legal and factual sufficiency of the evidence.
2. Fitch was also indicted for injury to a child, but had not been tried at the time of appellant's trial. Fitch
and appellant married shortly before appellant's trial.
3. Rule 43.2(b) and (c) are substantively identical to former Tex. R. App. P. 80(b)(2) and (3), on which
we relied in Bigley.
4. The revised definition of "knowingly" contained in the supplemental charge was not limited to the
result of conduct. Appellant did not object to the supplemental charge on that basis, and the application
paragraphs properly required the jury to find that appellant knew her acts or omissions would result in
serious bodily injury. See Hughes v. State, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994); Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion on rehearing).


tions had to be satisfied. In response,
the court submitted a supplemental charge instructing the jury to disregard the quoted definitions and giving
them the full definition of "knowingly" found in section 6.03(b).