**AFFIRMED as MODIFIED and Opinion Filed December 14, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01052-CR

**ANTHONY TROY CHIPLIN JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1700211-T**

## MEMORANDUM OPINION

Before Justices Stoddart, Whitehill, and Boatright
Opinion by Justice Whitehill

Appellant was charged with knowingly or intentionally causing injury to a child by omission, and a jury convicted him of the lesser-included offense of recklessly causing serious bodily injury by omission. Although the jury assessed punishment at ten years imprisonment and a $10,000 fine, they recommended that the sentence be suspended and appellant placed on community supervision. The trial court placed appellant on community supervision for ten years, assessed a $10,000 fine, and ordered that appellant serve 180 days in jail as a condition of his community supervision.

Appellant argues the evidence is insufficient to support his conviction because it does not establish that (i) he had a duty to act, (ii) causation between his conduct and the harm, and (iii) he

acted recklessly. Appellant also argues that the judgement should be reformed to reflect the offense for which he was convicted and the related penal code provision.

As discussed below, we conclude the evidence is sufficient to support appellant's conviction. We modify the judgment to reflect that appellant was convicted of recklessly causing bodily injury to a child by omission under TEX. PENAL CODE §22.04(e), and as modified, affirm the trial court's judgment.

## I. BACKGROUND

Appellant and Jessica Richardson had a romantic relationship. Appellant began spending two to three nights a week at Richardson's apartment, and was there for ten days straight the week the child was injured.

Appellant began physically disciplining Richardson's children, including the four-year-old complainant, J.R. Richardson said she asked appellant to stop, but he did not do so.

On Wednesday July 9, 2014, Richardson heard appellant disciplining J.R. and heard J.R. crying. J.R. stopped crying after about thirty minutes, and when Richardson went into the bedroom, J.R. "was laying on the floor unconscious." Appellant told Richardson not to call 911 and took her phone away. Initially, Richardson and appellant said that J.R. suffered a football injury.

Richardson retrieved her phone on Friday and called 911. Doctors at the hospital found that J.R. had liver and kidney injuries, a broken rib, and bleeding inside his brain. He also had extensive bruising to his right forehead, right eye, and knees, and he had burns on his buttocks.

Appellant was charged with intentional or knowing injury to a child by omission. Richardson pled guilty to injury by a child by omission, and pursuant to a plea bargain, agreed to testify in the State's case against appellant.

A jury found appellant guilty of the lesser-included offense of recklessly causing serious bodily injury to a child by omission and assessed punishment at ten years imprisonment and a $10,000 fine, but recommended that the sentence be suspended and appellant placed on community supervision. The trial court placed appellant on community supervision for ten years, assessed a $10,000 fine, and ordered that appellant serve 180 days in jail as a condition of his community supervision. Appellant timely appealed.

## II. ANALYSIS

### A. First, Second, and Third Issues: Is the evidence sufficient to support the conviction?

Appellant's first three issues argue that the evidence is insufficient to support his conviction because it does not establish (i) he had a duty to act, (ii) causation between his conduct and the harm, and (iii) that he acted recklessly.

As discussed below, viewing the evidence in a light most favorable to the verdict, we conclude that a rational jury could have found all of the essential elements to support appellant's conviction for recklessly causing serious bodily injury by omission.

#### 1. Standard of Review and Applicable Law

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This standard gives full play to the fact finder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). And the fact finder is the sole judge of the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

The penal code provides that injury to a child is "intentionally, knowingly, or recklessly, by omission, causing serious bodily injury to a person fourteen years of age or younger. TEX. PENAL CODE § 22.04(a)(1), (c) (1). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE § 1.07(a)(46). "Omission" means failure to act. *Id*. 1.07(a)(34).

An omission causing serious bodily injury is an offense under §22.04 if: (i) the actor has a legal or statutory duty to act, or (ii) the actor has assumed care, custody, or control of a child, elderly individual, or disabled individual. *Id*. §22.04(b). An actor has assumed care, custody, or control of a child if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care of a child. TEX. PENAL CODE § 22.04 (d). Thus, an omission that causes serious bodily injury to a child is conduct constituting an offense if the actor has assumed care, custody, or control of a

child. *Id*. §22.04(b)(2). On the other hand, a parent has a statutory duty to care for, control, protect, and provide medical care for a child. TEX. FAM. CODE § 151.001(a)(2), (3).

## 2.  Analysis

### a.  Duty

Here, the jury was charged on the law of the parties. A person is a criminally responsible party to an offense "if the offense is committed by his own conduct, by the conduct for another for which he is criminally responsible, or by both." TEX. PENAL CODE § 7.01.

A person is criminally responsible for the conduct of another if, acting "with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE § 7.02.

Evidence is sufficient to sustain a conviction under the law of the parties if it shows the defendant was physically present at the commission of the offense and encouraged the commission of the offense either by words or other agreement. *See Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). Thus, the jury in this case could have found appellant guilty if they found (i) he assumed care, custody, and control of J.R. and recklessly caused serious bodily injury by omission, or (ii) committed the offense as a party with Richardson.

Appellant argues that the language in the indictment and the jury charge merely alleged that he had a statutory parental duty to act because the language said that he "had a legal and statutory duty to act in behalf of [J.R.] in the [he] had assumed care, custody, and control of [J.R.].

But we measure the sufficiency of the evidence of the challenged elements under a hypothetically correct jury charge applicable to the case. *See Malik v. State*, 953 S.W.2d 234,240 (Tex. Crim. App. 1997). Under such a charge, the jury could have found appellant guilty if they found that (i) he had a legal or statutory duty to act, (ii) he had assumed care, custody, and control

of J.R., or (iii) he was criminally responsible under the law of the parties. *See* TEX. PENAL CODE §§ 22.04(b), 7.01.

It is undisputed that appellant did not owe the statutory duty of a parent. Therefore, we consider only whether he had a duty because he assumed care, custody, or control of the child or was criminally responsible as a party.

The evidence showed that appellant spent two to three nights a week with Richardson and brought his seven-year-old daughter to her apartment every other weekend. Appellant did not have a home of his own. He was at Richardson's apartment every night from July 1, 2014 until July 11, 2014 (the week J.R. was injured).

Appellant and Richardson were not working and spent a great deal of time together. In addition, appellant took Richardson and her children (including J.R.) to a Dallas Mavericks game, a Texas Rangers game, and "trade days." Appellant began disciplining J.R. by spanking him on the buttocks with a belt or on his legs with his hands. Sometimes he would hit J.R. in the chest or make him hold his hands in the air. On two occasions, appellant hit J.R. on his head or back with a "little" baseball bat, which Richardson said could have been playing rather than punishment.

Appellant would sometimes turn the water on in the bathtub and lay J.R.'s clothes out. He also helped Richardson try to teach J.R. his ABCs, colors, and numbers. According to Richardson, appellant was a "responsible parent," although she did not always agree with his disciplinary measures.

On the day Richardson heard appellant disciplining J.R. in the bedroom, J.R. was crying. When Richardson checked on him thirty minutes later, J.R. was "laying on the floor unconscious," gazing off to the left, with his eyes "rolling in the back of his head." J.R. had a "new mark on his head." Appellant was standing over J.R., and when Richardson asked what happened, appellant said he did not do anything to J.R.

Appellant carried J.R. to the living room couch. J.R. was not making any sound or moving, other than a few movements of his left hand, and began urinating on himself. Appellant told Richardson that he did not want to get in trouble and that he would blame her for J.R.'s condition if she called the police. Richardson did not call for help because appellant took her phone. Instead, Richardson and appellant administered Tylenol and Pediasure to J.R. with a syringe. Appellant had to use a "nose sucker" to remove excess liquid because J.R. could not swallow consistently.

Appellant stayed with J.R. in the apartment that evening while Richardson went out to get food and diapers for J.R. Appellant and Richardson stayed on the couch with J.R. all night, and remained at the apartment all day Thursday. On Friday morning, Richardson retrieved her cell phone from appellant's pants pocket, and after charging it for about 3 hours, called 911. Appellant was upset that she had done so, and told Richardson to say that J.R. got hurt playing football.

Viewing this evidence in a light most favorable to the verdict, a rational jury could conclude that appellant assumed care, custody, or control over J.R. Likewise, a rational jury could also have found that appellant committed the offense as a party.

Appellant insists that he has no party responsibility because he had no duty to prevent Richardson from committing the offense. *See* TEX. PENAL CODE § 7.02(a)(3). This argument, however, is misplaced.

The penal code provides three alternate ways that a person can be criminally responsible for another's actions. *Id*. § 7.02 (a). And while the failure to prevent someone from committing an offense is one of the alternatives, a person may also be criminally responsible if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid in the commission of the offense. *Id.* at § 7.02(a)(2).

It is undisputed that Richardson had a statutory duty to care for, control, protect, and provide medical care for J.R. Appellant was physically present when J.R. was injured. He helped

Richardson administer medication. He told Richardson not to call the police and later told her to say that J.R. was injured playing football. Appellant's presence and actions demonstrate that he acted with the intent to promote or assist the commission of the offense, and therefore, the jury rationally could conclude that he was criminally responsible as a party. *See id.* We resolve appellant's first issue against him.

### b. Causation

Appellant argues that the evidence is insufficient to support his conviction because there is no evidence that the delay in seeking medical treatment aggravated J.R.'s injury. We disagree.

Under the penal code, "a person is criminally responsible if the result would have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE § 6.04(a). The existence of a causal connection is determined by the jury. *See Fountain v. State*, 401 S.W.3d 344, 358–60 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Here, the State was required to prove more than appellant (individually or collectively with Richardson) failed to provide medical treatment for J.R.'s serious bodily injury. *See Dusek v. State*, 978 S.W.2d 129, 133 (Tex. App.—Austin 1998, pet. ref'd); *Peyton v. State*, 106 S.W.3d 326, 327–28 (Tex. App.—Fort Worth 2003, pet ref'd). Instead, the State was required to prove that J.R. suffered serious bodily injury **because** appellant (individually or collectively with Richardson) failed to provide him with medical treatment. *See Dusek*, 978 S.W.2d at 133; *Peyton*, 106 S.W.3d at 329 (emphasis added).

Appellant relies on *Dusek* to argue that the State failed to prove that the delay in seeking treatment aggravated J.R.'s injuries. In that case, the Austin Court of Appeals reversed a conviction for failure to obtain medical care for a young child. *Dusek*, 978 S.W.2d at 133-37. The complainant's mother took her son to the emergency room after her fiancé broke the child's leg.

*Id.* at 131-33. The doctor determined that the child had multiple injuries, including a broken leg. *Id* at 131. The mother was convicted on multiple injury to a child offenses, including the failure to obtain medical care for the broken leg. *Id*. at 132.

To convict on that offense, the jury had to find beyond a reasonable doubt that the boy suffered serious bodily injury to his leg because his mother did not provide medical care. *Id*. at 133. The jury convicted the mother. *Id*. at 132.

But, on appeal, the Austin court concluded that there was legally insufficient evidence that the denial of medical care caused a serious bodily injury because there was no evidence that (i) the mother failed to obtain medical treatment, (ii) any omission on her part aggravated the injury, (iii) the leg had been broken for an unusual period of time, (iv) treatment had been delayed, or (v) recovery was in any way hindered by a delay in receiving medical care. *Id*. at 133.

Here, by contrast, there was evidence of delayed treatment for an unusual time period when appellant and Richardson remained in the apartment with J.R. for nearly two days after he became non-responsive.

There was also evidence that the delay in seeking medical treatment aggravated J.R.'s injury. Dr. Megan Street, the emergency room treating physician, testified that J.R. was unresponsive when he arrived and scored four on the Glasgow Coma Scale, which was "next to the worst you can get." He had bleeding inside his left ear and blood beside his left eardrum, which indicated he might have bleeding inside his brain. Dr. Street said J.R. should have been taken to the hospital when he stopped eating, drinking, and talking, and if the blood had been removed from his brain earlier, he would not have suffered an ischemic injury to his brain from oxygen deprivation due to the pressure of the bleeding in his brain.

Dr. Kristen Reeder, a physician who treated J.R. and assisted Dr. Mathew Cox at the REACH clinic,[1] testified about Dr. Cox's conclusion that J.R.'s brain injury was made worse by a considerable delay in seeking medical care. Reeder opined that a person without medical training could have recognized that J.R. needed to see a doctor.

Dr. Dale Swift, a neurosurgeon, placed an intracranial pressure monitor in J.R.'s skull to monitor the pressure caused by the swelling in J.R.'s brain. The left side of J.R.'s brain was "very, very swollen" and J.R. was "quite" close to death, so surgery was required. Swift explained that the delay in seeking medical treatment was significant because "things were getting worse without necessarily having a new injury, but by not getting attention." He also said, "I don't think [J.R.] would have made it without, you know, coming to medical attention." According to Dr. Swift, J.R.'s injuries were "completely life altering."

Appellant challenges Dr. Reeder's and Dr. Swift's testimony concerning the harm caused by delay as speculative because it failed to establish "identifiable harm." We disagree. The doctor's testimony that J.R.'s brain injury was made worse by delayed treatment is sufficient to establish causation under the penal code. *See* TEX. PENAL CODE ANN. § 6.04(a).

Thus, viewing the evidence in a light most favorable to the verdict, we conclude that the jury rationally could have found that appellant's delay in seeking medical care for J.R. aggravated J.R.'s injuries. Alternatively, the jury also could have found that Richardson's delay in seeking medical care caused J.R. serious bodily injury and appellant promoted or assisted in the commission of the offense as a party. We thus resolve appellant's second issue against him.

### c. Mental State

The jury found that appellant committed the offense recklessly. Appellant argues that since injury to a child by omission is a "result of conduct" offense, the State was required to prove his

---

[1] 'REACH' is an acronym for referral and evaluation of at risk children.

mental state as it related to the result of his conduct—that is, that he acted with the requisite mental state so as to affect the result. *See Haggins v. State*, 785 S.W.2d 827, 828 (Tex. Crim. App. 1990). While we agree with appellant's general statement of the law, we disagree that the evidence is insufficient to establish this element of the offense.[2]

The State had to prove that appellant was reckless regarding the result of his conduct by showing that appellant was aware of but consciously disregarded a substantial and unjustifiable risk that the result would occur. *See* TEX. PENAL CODE § 6.039(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id*.; *see also Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007). "Mere lack of foresight, stupidity, irresponsibility, thoughtlessness, ordinary carelessness, however serious the consequences . . . do not suffice to constitute . . . criminal recklessness." *Id.* Rather, "recklessness requires the defendant to actually foresee the risk involved and consciously decide to ignore it." *Id.* A defendant's culpable mental state is usually grounded upon inferences drawn from the circumstances, and may be inferred from the acts, words, and conduct of the accused. *See Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989).

Appellant told the investigating detective that he saw the change in J.R., who was playing on Monday and Tuesday, but lying on the couch unable to get up on Wednesday and Thursday. Appellant said that he and Richardson discussed calling 911, but decided to wait and see if J.R. got better. Dr. Reeder opined that a person without medical training would have realized that J.R. needed treatment.

---

[2] Appellant also argues that we must disregard Richardson's accomplice testimony about his state of mind because it is not corroborated. *See* TEX. CODE CRIM. PROC. ANN. 37.14. But appellant did not challenge the sufficiency of the evidence corroborating Richardson's testimony; instead, he challenged the sufficiency of the evidence to prove his mental state. Moreover, even without Richardson's testimony, the evidence is sufficient.

Moreover, appellant's actions suggest a conscious disregard for the risk to J.R. because he was concerned for himself. When Richardson found him standing over J.R., he said he didn't do anything. Appellant tried to prevent Richardson from calling for help because he did not want to get in trouble. And when she finally did so, appellant told Richardson to say that J.R. was injured playing football.

From this evidence, the jury rationally could conclude that appellant and Richardson acted recklessly. We thus resolve appellant's third issue against him.

**B.     Fourth Issue:  Should the judgment be reformed?**

Appellant argues that the judgement should be modified to reflect that appellant was convicted of recklessly causing bodily injury to a child by omission under TEX. PENAL CODE §22.04(e), and the State agrees.[3] We are authorized to reform a judgment to make the record speak the truth when we have the necessary information to do so. *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

Here, the record reflects that appellant that appellant was convicted of recklessly causing bodily injury to a child by omission, an offense under TEX. PENAL CODE §22.04(e). We therefore sustain the State's cross-point and modify the judgment accordingly.

---

[3] The judgment currently states that appellant was convicted of "Injury Child Elderly SBI" and states that the offense was a "1st degree felony."

## III. CONCLUSION

We modify the judgment to reflect that that appellant was convicted of recklessly causing bodily injury to a child by omission, an offense under TEX. PENAL CODE §22.04(e), and as modified, affirm.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
171052F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

ANTHONY TROY CHIPLIN JR.,
Appellant

No. 05-17-01052-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1700211-T.
Opinion delivered by Justice Whitehill.
Justices Stoddart and Boatright
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to show that appellant was convicted of recklessly causing bodily injury to a child by omission under TEX. PENAL CODE § 22.04(e).

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered December 14, 2018.