**Donald Ray BROOKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–90–00103–CR.**

Court of Appeals of Texas,
El Paso.

Oct. 24, 1990.

Carlos Correa, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, Lester Blizzard, James Buchanan, Asst. Dist. Attys., Houston, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a conviction for the offense of aggravated robbery. The jury assessed punishment at forty-seven years' imprisonment. We affirm.

In Point of Error No. One, the Appellant asserts that the court erred in failing to suppress the evidence of the identification of the Appellant. At trial, the State utilized the testimony of Hung Nguyen who was then a clerk at a Stop 'N' Go convenience store at 948 Heights Boulevard in Houston, Texas. The witness related that, on the evening of December 6, 1987, the Appellant walked into the store and threatened him with a rifle and ordered the witness to hand over all the money. As the clerk complied with this order, the Appellant reached down and pulled out all the change and the food stamps. The store was equipped with a surveillance camera which was activated by pulling out a specially situated dollar bill. The witness pulled that bill and the camera took the Appellant's picture. Three days later, the witness was shown the photograph and he identified it as being a picture of the robber. The police took the picture to a local television station where it was exhibited on a weekly news show which depicted photographs of alleged robbers. The program solicited information on the identity of the suspects for cash rewards. Approximately a month after the robbery, Joe Salvato, a robbery detective with the Houston Police Department, received an anonymous tip with regard to the Appellant. That day, two police officers arrested the Appellant. They utilized the aforementioned photograph to identify the Appellant. When he was arrested, the Appellant was standing on the street several blocks from his home. He was not engaged in any illicit or suspicious activity. The officers did not have a warrant. On January 19, 1988, the Appellant was placed in a physical lineup and was identified by the complaining witness. He was in custody at the time but had not been charged with any offense. Prior to trial, a hearing was held on the Appellant's motion to suppress the identification. The Appellant argued that both the lineup and the in-court identification should be suppressed as they resulted from an illegal arrest. The court overruled the motion. At trial, the State introduced evidence of the lineup to bolster the in-court identification. The Appellant testified in his own defense. He stated that he did not have a gun when he entered the store. He bought some items and then got into a heated argument with the clerk concerning the amount of change he received. After twenty minutes, he left the store without his change. The Appellant stated that he did not take any money from the store.

The Appellant does not claim that the lineup was impermissibly suggestive and led to a very substantial likelihood of misidentification. Rather, he contends that both the evidence of the lineup and the in-court identification should be suppressed as they were the result of an illegal arrest. The Appellant cites *Hill v. State*, 692 S.W.2d 716 (Tex.Crim.App.1985) and *Garza v. State*, 771 S.W.2d 549 (Tex.Crim.App. 1989) in support of this contention. In *Hill*, a rape victim had given the police a composite drawing of the defendant. The defendant was arrested while standing on the street based upon his resemblance to the drawing. The police did not have a warrant. Following his arrest, the defendant was identified by the victim in a physical lineup which was introduced during the trial to bolster the in-court identification. The Court of Criminal Appeals held that it was reversible error to permit the victim to reinforce her in-court identification by testifying that she had also identified the defendant in a lineup held a year after the offense when the lineup resulted from an illegal arrest made for the purpose of obtaining such identification. Identification was the most critical issue in the case and the victim was the sole eyewitness. She had been unable to identify the defendant from a photographic lineup several days before the lineup. She was crying, hysterical and emotionally upset during the course of the offense. Further, there were discrepancies between the composite drawing and the defendant's actual appearance.

In the present case, the clerk at the Stop 'N' Go store stated that he was able to make his in-court identification independently from the lineup based upon his remembrance of the robbery. The Appellant testified at trial that he was at the store but was engaged in innocent conduct.

The photograph was obtained independently from any alleged police misconduct. The fruit of the poisonous tree doctrine is not applicable when knowledge or possession of the evidence in question is obtained from a source independent of the State's wrongdoing. *Wicker v. State*, 667 S.W.2d 137 (Tex.Crim.App.1984). Assuming that the Appellant's arrest was illegal, we find that there is evidence from an independent source and given the Appellant's testimony, we find that no harm occurred from the admission of the testimony concerning the lineup.

The Appellant also contends that the clerk's in-court identification should have been suppressed due to the illegality of the arrest. In *Garza*, cited by Appellant in support of this contention, the Court of Criminal Appeals reversed the conviction because witness testimony relating to the offense and the identification of the defendant was obtained as the result of an illegal stop and detention. However, in *Garza*, the State did not make a record for, or raise the issues of, attenuation of taint, the independent source doctrine or the inevitable discovery doctrine. Further, the tainted testimony was the only testimony tying the defendant to the offense. As discussed above, there was an independent source to the complained-of testimony and the Appellant's testimony that he was at the scene of the offense mitigates any harm that may have accrued. Point of Error No. One is overruled.

■ In Point of Error No. Two, the Appellant contends that the court erred in refusing to instruct the jury on the lesser included offense of robbery. The photograph of the Appellant taken at the convenience store does not show a rifle. The Appellant requested an instruction with regard to the lesser included offense of robbery reasoning that the absence of the rifle in the photograph raised the issue of whether or not a deadly weapon was actually employed. The photograph is inconclusive in that it does not show the Appellant's hands and it is doubtful, based on the photograph, that the lesser included offense was raised. However, we do not have to reach that point. When the defendant denies the commission of the offense, the issue of a lesser included offense is not raised. *Eldred v. State*, 578 S.W.2d 721 (Tex.Crim.App.1979). Point of Error No. Two is overruled.

■ In Points of Error Nos. Three and Four, the Appellant argues that he was denied effective assistance of counsel. Successful allegations of ineffective assistance of counsel must show that counsel was not functioning as counsel guaranteed by the sixth amendment in providing reasonably effective assistance. The second prong of this test requires a showing that these errors were so serious as to deprive the Appellant of a fair trial due to a reasonable probability, but for counsel's unprofessional errors, the results would have been different. *Wilkerson v. State*, 726 S.W.2d 542 (Tex.Crim.App.1986), *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The constitutional right to counsel does not mean errorless representation. In order to meet the constitutional standard, counsel must provide reasonably effective assistance of counsel. *Wilkerson*, 726 S.W.2d at 548; *Boles v. State*, 598 S.W.2d 274, 279 (Tex.Crim.App. 1980). In reviewing assertions of ineffectiveness of counsel, the totality of the representation is examined as opposed to focusing upon isolated acts or omissions. The reviewing court does not engage in hindsighted comparisons of how other counsel might have tried the case. *Wilkerson*, 726 S.W.2d at 548; *Boles v. State*, 598 S.W.2d at 279.

The Appellant testified on his own behalf. During cross-examination by the State, the following exchange took place with regard to a discussion the Appellant had with a police detective after his arrest:

THE STATE: What did you say?

APPELLANT: He said, "Do you know the person on the picture," and I told him yes.

THE STATE: You said yes, that it was you, didn't you?

THE APPELLANT: I sure did.

THE STATE: Did Sergeant Salvato ask you if you wanted to talk about this robbery?

THE APPELLANT: That's right. Yes, sir.

THE STATE: What did you tell him?

THE APPELLANT: I told him I didn't know nothing about it.

\*   \*   \*   \*   \*   \*

THE STATE: Can we have your answer again, sir?

THE APPELLANT: I didn't know nothing about the robbery.

THE STATE: So on January 18th when you met with Sergeant Salvato at the Houston Police Department Robbery Division after you had been arrested, he asked you if you wanted to talk about the robbery, and you said you didn't know nothing about it?

THE APPELLANT: Yes, sir.

THE STATE: Do you recall at any time making a statement to Sergeant Salvato to the effect, "There's nothing to talk about. I'll just have to do the time. I've let my family down again"?

.   .   .   .   .

THE STATE: Do you recall making that statement?

THE APPELLANT: I did make that statement, but I had a reason to make that statement, and not because of the case I'm on.

The Appellant's counsel objected to this questioning on the ground they were post custodial statements. During argument, the prosecutor referred to these statements and trial counsel lodged no objection.

The Appellant contends that it was error for trial counsel not to request an instruction limiting the jury's consideration of these statements to the issue of the Appellant's credibility. He also asserts that trial counsel's failure to object to the argument constitutes ineffectiveness of counsel.

The Appellant characterizes the above-mentioned statements as being impeachment questioning pursuant to Tex.Code Crim.Pro.Ann. art. 38.22 § 5 (Vernon 1979). We find that the line of questioning is more properly characterized as a substantive inquiry into the Appellant's guilt and were therefore inadmissible under the aforementioned statute. Trial counsel's objection was correct. However, at trial, the State and the court viewed the questioning as impeachment. Appellant's trial counsel could have requested a limiting instruction; however, it would have been a nonsensical instruction requiring the jury not to consider the custodial statements as evidence of the Appellant's guilt when the police, in fact, were inquiring into his guilt. Further, we find that it would have been a fruitless exercise to object to the State's argument after the statements had been erroneously admitted. The Appellant has failed to meet the Strickland standard. Points of Error Nos. Three and Four are overruled.

■ In Point of Error No. Five, the Appellant asserts that the court erred in not sustaining the Appellant's objection to improper argument outside the record. During closing argument, the prosecutor made the following remark.

What Mr. Anderson is asking you to do is to find, well, that there wasn't a theft and there wasn't a deadly weapon used and that he didn't use a gun. All those things came out of his argument, and you can bet a $100 it would be one more thing he would be saying if we didn't have this picture of this man. He would be saying it wasn't him. He wasn't there.

The Appellant objected that the argument was outside the record and the court overruled the objection.

During argument, counsel may make reasonable inferences from the facts in evidence. *Griffin v. State,* 554 S.W.2d 688 (Tex.Crim.App.1977). We find that the comment is a reasonable inference from the record. Point of Error No. Five is overruled.

■ In Point of Error No. Six, the Appellant contends that the court erred in admitting a hearsay statement. At trial, the Appellant objected to the complaining witness stating what he had been told with regard to how the surveillance camera

worked. The objection was overruled. This same evidence was elicited at other portions of the trial without objection. As such, error, if any, was cured. *Crocker v. State*, 573 S.W.2d 190 (Tex.Crim.App.1978). Point of Error No. Six is overruled.

In Point of Error No. Seven, the Appellant argues that the charge to the jury was fundamentally defective in that it failed to define reasonable doubt. A defendant is not entitled to a definition of the term "reasonable doubt." *McGinty v. State*, 723 S.W.2d 719 (Tex.Crim.App.1986). Point of Error No. Seven is overruled.

In Point of Error No. Eight, the Appellant asserts the State misdefined the term "reasonable doubt" during voir dire. The Appellant complains of a series of statements made by the prosecutor during voir dire which he asserts misdefined the concept of reasonable doubt. No objection was lodged; therefore, nothing is preserved for review. *Crocker*, 573 S.W.2d at 205. Point of Error No. Eight is overruled.

The judgment of the trial court is affirmed.