

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BLANCA MARTINEZ, | § | No. 08-19-00268-CR |
| Appellant, | | |
| | § | Appeal from the |
| v. | | |
| | § | County Court at Law Number Two |
| THE STATE OF TEXAS, | | |
| | § | of El Paso County, Texas |
| Appellee. | | |
| | § | (TC# 20190C03396) |

## O P I N I O N

Appellant Blanca Martinez was convicted by a jury of cruelty to non-livestock animals committed against seven canines.[1] Martinez challenges her conviction in three issues—two relating to charge error and the other contending the evidence is legally insufficient to support her conviction.

We affirm.

---

[1] Conviction was by seven separate informations, each alleging one count of cruelty to non-livestock animals committed against a separate canine. At trial, the State filed a motion to consolidate the seven cases, which was granted. Appellant challenges her conviction in seven separate appeals—Nos. 08-19-00265-CR, 08-19-00266-CR, 08-19-00267-CR, 08-19-00268-CR, 08-19-00269-CR, 08-19-00270-CR, 08-19-00271-CR. Carrying forward Appellant's individual structure, we address each appeal separately. This particular appeal solely addresses appellate cause number 08-19-00268-CR, which involves the offense committed against the canine named "Blossom."

## I.  BACKGROUND

*Animal Services Investigation*

On November 25, 2018, Officer Brittany Sanchez of the City of El Paso Animal Services field operations of El Paso was dispatched to an El Paso residence located at 4025 Idalia. Upon arrival, Officer Sanchez confirmed four canines were present in the backyard.[2] Officer Sanchez testified the four canines all appeared to be underweight. During Officer Sanchez's inspection, she observed two bowls in the backyard—one empty, and the other with minimal water. After inspection of the canines and their living conditions, Officer Sanchez issued a "24-hour notice," which she gave to Martinez's son there at the residence. Pursuant to the notice, Martinez was required to obtain a physical examination by a veterinarian for each canine within twenty-four hours.

On November 29, Officer Sanchez, accompanied by Officer Saul Falliner, returned to Martinez's residence. The officers contacted Martinez by phone, and relayed she needed to come home for an inspection, but Martinez explained she was unable to because she was at work. The officers and Martinez discussed Martinez's failure to comply with the twenty-four-hour notice, and Martinez eventually expressed willingness to surrender her canines. While still at Martinez's residence, the officers inspected the backyard and observed two bowls—one empty, and one with minimal water. Officer Arturo Gutierrez later arrived and took photographs of the yard and the canines.

---

[2] We note Martinez does not allege any instances of trespassing. The subsequent observations of the canines and the backyard that occurred while no one was home were made from the viewpoint of the alleyway behind Martinez's backyard.

2

On November 30, Officers William King and Michael Briones were dispatched to Martinez's residence in response to four canines "running loose." Officer King testified the canines appeared "malnourished and aggressive." The officers eventually secured three out of the four canines—three were secured back onto Martinez's property and one was confined to the unit vehicle.

Later that day, Officer Sanchez returned to Martinez's residence and was able to make contact with Martinez. Officer Sanchez testified to seeing three canines in the backyard at this time, and it was later confirmed Martinez had additional canines inside her home—three puppies. Martinez eventually surrendered all seven canines.

### Dr. Canupp's Examination

Dr. Alana Canupp, the Chief Veterinarian for the City of El Paso Animal Services, examined the canines on November 30. In the course of her examination, Dr. Canupp utilized what is known as the Purina Body Scale ("BCS"), which is a method of scoring the physical condition of canines on a scale of one to nine—one being severely emaciated and in very poor health to the point of almost using the term "starvation," and nine being morbidly obese.

Dr. Canupp assessed Blossom and scored her a BCS of 2 out of 9. Dr. Canupp testified Blossom, along with her puppy siblings, arrived dehydrated and underweight.

### The Trial

At trial, the State called several of the City of El Paso Animal Services Department officers and Dr. Canupp to testify. The State introduced dozens of photographs depicting the condition of the canines and Martinez's backyard. The defense called Arturo Solis, Martinez's romantic partner. Martinez herself also testified. After both parties rested, the court submitted and read all

3

seven charges to the jury—one charge for each canine. Neither party lodged objections to the seven charges, and the parties proceeded with closing arguments. The jury was excused to deliberate. During deliberations, the jury, by note, requested the definition of "recklessly." The trial court complied with the request and provided the jury with the Texas Penal Code definition of the term.

The jury found Martinez guilty of cruelty to non-livestock animals as charged in all seven informations. The trial court assessed punishment on each conviction at one year confinement, to run concurrently, probated for eighteen months. This appeal followed.

## II.  ISSUES ON APPEAL

In three issues, Appellant challenges her conviction. In her first and second issues, Martinez asserts reversible error for the trial court's failure to afford her the opportunity to examine and object to the supplemented charge, as is required under Articles 36.15 and 36.16 of the Texas Code of Criminal Procedure, which precluded her from conducting additional closing argument, thereby violating her right to effective counsel pursuant to the Sixth Amendment of the U.S. Constitution. In her third and final issue, Martinez asserts the evidence is legally insufficient to prove her conduct was intentional, knowing, or reckless—the *mens rea* elements of the charged offense.

We address all three issues, but alter the order of their presentation.

## III.  LEGAL SUFFICIENCY

In Issue Three, Martinez asserts the evidence is legally insufficient to support her conviction beyond a reasonable doubt. We address this issue first because it seeks the greatest relief. *See Finley v. State*, 529 S.W.3d 198, 202 (Tex.App.—Houston [14th Dist.] 2017, pet. ref'd) (reviewing court will first address issues that, if sustained, require reversal and rendition of

4

judgment, before turning later to issues seeking remand); *see also* TEX.R.APP.P. 43.3 ("[w]hen reversing a trial court's judgment, the court [of appeals] must render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for another trial.").

## A. Standard of Review and Applicable Law

The Due Process Clause of the U.S. Constitution requires the State to prove every element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). We must view all of the evidence in the light most favorable to the verdict to determine whether any rational juror could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005). We treat circumstantial evidence as being equally probative as direct evidence. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). Guilt may be established by circumstantial evidence alone. *Id*. We measure the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App.—El Paso 2009, no pet.)(citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

The trier of fact is the sole judge of the weight and credibility of the evidence. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014)(citing *Jackson*, 443 U.S. at 319). We must presume the fact finder resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *Id.* A reviewing court may not reevaluate the weight and credibility of the evidence

5

or substitute its judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). Thus, our only task is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Martinez was charged with the offense of cruelty to non-livestock animals. Based on a hypothetically correct jury charge, the State was required to prove in this case, beyond a reasonable doubt, that Martinez (1) intentionally, knowingly, or recklessly; (2) failed unreasonably to provide necessary food, water, care or shelter; (3) for Blossom, an animal in her custody. *See* TEX. PENAL CODE ANN. § 42.092(b)(3).[3] A person acts intentionally, or with intent, with respect to the nature of her conduct or to a result of her conduct, when it is her conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a). A person acts knowingly, or with knowledge, with respect to the nature of her conduct or to circumstances surrounding her conduct, when she is aware of the nature of her conduct or that the circumstances exist. *Id.* § 6.03(b). A person acts knowingly, or with knowledge, with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result. *Id.* A person acts recklessly, or is reckless, with respect to circumstances surrounding her conduct or the result of her conduct when she is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary

---

[3] The State was also required to prove: (1) the date of the offense; (2) that Martinez committed the alleged offense in El Paso County, Texas; and (3) that Martinez's conduct was not a generally accepted or otherwise lawful form of conduct occurring solely for the purpose of or in support of (a) fishing, hunting, trapping, or wildlife management; (b) wildlife or depredation control, or shooting-preserve practices as regulated by state or federal law; or (c) animal husbandry or agriculture practice involving livestock animals. *See* TEX. PENAL CODE ANN. § 42.092(f). Martinez does not contest or otherwise challenge the legal sufficiency of these elements on appeal.

person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

Circumstantial evidence alone is sufficient to prove the culpable mental state of the charged offense, which can be inferred from the acts, words, and conduct of the accused, and the surrounding circumstances. *Berge v. State*, No. 08-15-00263-CR, 2017 WL 2351093, at *5 (Tex.App.—El Paso May 31, 2017, no pet.)(not designated for publication).

**B. Analysis**

Martinez asserts the State failed to prove that she intentionally, knowingly or recklessly failed unreasonably to provide necessary food, water, or medical care for Blossom. Specifically, Martinez claims the State merely proved she was careless and neglectful in failing to provide necessary food, water, care and shelter, which she alleges was insufficient to satisfy the culpable mental states of the charged offense. Martinez argues the evidence at trial, at most, establishes she "*ought* to have been aware of a substantial and unjustifiable risk[,]" which only proves she was criminally negligent—not reckless. We disagree.

As the State maintains, arguments made by counsel are not evidence and therefore do not undermine the evidence presented at trial. *Barrientez v. State*, 487 S.W.2d 97, 101 (Tex.Crim.App. 1972). At trial, Dr. Canupp testified that after examining Blossom and performing an assessment, she scored the canine a BCS of 2 out of 9 and reported Blossom as arriving severely dehydrated and underweight. Dr. Canupp testified Blossom had the same medical status as Buster and Felipe, her siblings. Dr. Canupp further stated that "[d]ehydration in a puppy is even more severe because they're young. They can't compensate as well as an adult." In clarifying the distinction between the terms "starvation," "dehydration," and "emaciation," Dr. Canupp explained that unlike dehydration, emaciation is more indicative of a chronic situation. Dr. Canupp testified she saw

7

signs of emaciation in the sibling puppies—including Blossom.

The State also presented dozens of photographs of the canines—including Blossom. The photographs of Blossom clearly depict her nearly penetrating ribs and vertebrae, corroborating the testimony of Dr. Canupp regarding Blossom's malnourished state at the time of the examination.

The State also called Officer Sanchez, who testified as to her observations of Blossom and the lack of provisions in Martinez's backyard. Officer Sanchez testified the four dogs located in the backyard all appeared to be underweight. Officer Sanchez provided testimony that on four separate occasions, she observed minimal to no water in the canines' water bowl. On November 25, Officer Sanchez reported minimal water in the bowl; on November 29, she again reported minimal water in the bowl; and on November 30, Officer Sanchez made two separate visits—the first at 8:23 a.m., in which no water was in the bowl, and the second at 9:26 a.m., in which there was water in the bowl. Officer Sanchez testified to seeing several bags of dog food, but all were located inside the house while the food bowl outside—where the canines were kept—remained empty. Three additional Animal Services officers testified and corroborated Officer Sanchez's testimony. Officer Falliner testified the canines appeared "skinny" and had "little fat showing the ribs. The hips on one of them was showing[,]" and he also confirmed there was no food or water in the bowls. Officer William King testified the canines appeared "malnourished and aggressive" and "definitely" underweight. Last, Officer Michael Briones testified the canines had "bone protruding through their bodies, rib cage is showing, their spinals and their hip bones [showing]" and believed the canines to be underweight. The State also admitted a photograph of the outdoor bowls—the food bowl completely empty, and the water bowl, also completely empty with remains of substantial dirt residue and leaves.

The facts of *Thomas v. State* are largely analogous to the case at hand. 352 S.W.3d 95, 100-01 (Tex.App.—Houston [14th Dist.] 2011, pet. ref'd). In *Thomas v. State*, a veterinarian testified the dog had a body condition score of 2. *Id.* The State admitted video and photographs depicting the dog's emaciation, as well as video and photographs of the defendant's backyard at the time of seizure showing there was no food in the backyard and the dog's water bowl containing filthy, undrinkable water. *Id.* The Houston Court of Appeals found the evidence legally sufficient to allow a rational juror to conclude the defendant's conduct was reckless. *Id.*

In the present case, based on Dr. Canupp's testimony and the other evidence—the photographs depicting the physical state of the canines and the empty water and food bowls, coupled with the officers' testimonies of the canines appearing malnourished and repeatedly observing the food and water bowls either completely or nearly empty—we find a rational jury certainly could have found Martinez behaved recklessly because she was "aware of but consciously disregard[ed] a substantial and unjustifiable risk" in failing to provide proper food, water, or shelter. *See* TEX. PENAL CODE ANN. § 6.03(c); *see also Mouton v. State*, 513 S.W.3d 679, 682-83 (Tex.App.—San Antonio 2016, no pet.)(in prosecution for cruelty to non-livestock animals, circumstantial evidence of the dogs appearing "lean" with wounds was sufficient to conclude a reasonable juror could have found reckless conduct).

Although Martinez narrows her sufficiency challenge to the element of "recklessly," we feel it is important to alternatively address the element of "knowingly." We find the evidence sufficient to also establish the higher culpable mental state—Martinez *knowingly* failed to provide food, water or care to Blossom. *See* TEX. PENAL CODE ANN. § 6.03(b). Martinez was aware and was legally put on notice that her canines were in need of water and food when she received the

twenty-four-hour notice on November 25. Not only did Martinez fail to comply with the notice, she also failed to replenish the water and food sources throughout the investigation—a time span of five days—which is evidenced by the photographs admitted at trial, and the testimonies provided by the State, which were all presented to the jury. We find a rational jury could have found Martinez acted "knowingly, or with knowledge, with respect to the nature of [her] conduct" in failing to provide proper food, water, or shelter. *See* TEX. PENAL CODE ANN. § 6.03(b); *see Martinez v. State*, 48 S.W.3d 273, 275-76 (Tex.App.—San Antonio 2001, pet. ref'd)(admitted photographs and testimony of the dog appearing malnourished—the dog's back vertebrae distinctly visible and the dog's abdominal wall having a severe tuck—and veterinarian testimony that the dog's other conditions developed over months, was legally sufficient to show the defendant acted knowingly).

Martinez further asserts that the State merely argued to the jury that Martinez's conduct constituted acts of neglect and carelessness. To the extent Martinez is attempting to argue improper closing arguments, it is the State's contention that this argument would be properly framed as a challenge to the alleged improper jury argument, which Martinez did not object to at trial and does not raise in her brief. Martinez attempts to bolster her argument that the evidence only proves criminal negligence by calling our attention to a statement made by the State. During its closing, the State made the following statement, "You know, ladies and gentlemen, it's not a matter of finances, this is a matter of neglect. This is a matter of carelessness." Martinez argues the State was able to lessen its burden by this statement. On appeal, the State argues this statement was not an attempt to lessen its burden, but rather, the prosecutor merely gave a description of Martinez's actions. As the Texas Court of Criminal Appeals stated, "it is not the job of this Court to guess

10

what meaning the prosecutor had in mind at that time." *Barrientez*, 487 S.W.2d at 101. "A jury argument must either be extreme and manifestly improper, or inject new and harmful facts to be reversible." *Id*.

In the present case, it is not an extreme or manifestly improper argument for the State, among other comments, to describe Martinez's actions as being careless and neglectful. Although Martinez herself offers a comprehensive overview of the evidence presented at trial to argue legal insufficiency, and at various points even emphasizes her financial limitations as the basis for her failure to comply with the twenty-four-hour notice, the jury is the ultimate fact finder of the weight and credibility of the evidence and we defer to those resolutions. *See Dobbs,* 434 S.W.3d at 170. Moreover, just as the State argues, this argument objecting to the State's closing has not been preserved for appellate review. *See* TEX.R.APP.P 33.1; *Clarrett v. State*, No. 08-12-00214-CR, 2014 WL 580237, at *1-2 (Tex.App.—El Paso Feb. 12, 2014, no pet)(not designated for publication)("in order for an improper jury argument error to be preserved, a party must assert a timely and specific objection to the argument and pursue the objection to an adverse ruling. . . . Even assuming there was no waiver, the result would not change, as reversible error is shown only if the defendant's substantial rights have been affected").

Viewing all of the evidence in the light most favorable to the verdict, and resolving all conflicts or inconsistencies in favor of that same verdict—as the trier of fact is the sole judge of the weight and credibility of the evidence—we conclude a reasonable jury could have found Martinez guilty of cruelty to non-livestock animals under either of the culpable mental states of knowingly or recklessly.

Martinez's third issue is overruled.

11

## IV. CHARGE ERROR

Having determined the evidence is legally sufficient, we turn to whether the alleged charge error amounts to reversible error. In her first issue, Martinez asserts the trial court reversibly erred by failing to comply with the requirements of Articles 36.15 and 36.16 of the Texas Code of Criminal Procedure. Specifically, Martinez contends she was not afforded the opportunity to examine or object to the charge when it was supplemented with the definition of "recklessly," per the jury's request. *See* TEX. CODE CRIM. PROC. ANN. arts. 36.15, 36.16. In her second issue, Martinez asserts her inability to examine or object to the supplemented charge prevented her from presenting further closing argument in violation of her constitutional right to effective assistance of counsel. As to both claims, we disagree.

### A. Standard of Review and Applicable Law

Alleged charge error is determined by Article 36.19 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19. When any requirement of Articles 36.15 or 36.16 has been disregarded in a criminal action, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record the defendant has not had a fair and impartial trial. *Id*. In reviewing charge error, we must first determine whether actual error exists, then we evaluate the resulting harm, if any. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

Article 36.19 contains separate harm standards contingent on whether trial-level objection was made. *Id*. If jury charge error was subject to timely objection at trial, reversal is required if the reviewing court finds "some harm" to the accused from the error. *Id*. However, if no trial-level objection was made, which is the exact situation Martinez complains of here, reversal is required

only if the error is so egregious that it deprived the accused of a fair and impartial trial. *Id*. In both situations, the harm must be actual, not merely theoretical; actual harm is established if the charge error affected the very basis of the case, deprived the accused of a valuable right, or vitally affected a defensive theory. *Kirchner v. State*, No. 08-11-00368-CR, 2014 WL 2090032, at *7 (Tex.App.—El Paso May 16, 2014, no. pet.)(not designated for publication). We review degree of harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

Article 36.16 governs final jury charges, which provides, in pertinent part: after the charge is read to the jury, and after closing argument begins, "no further charge shall be given to the jury unless required by . . . the request of the jury . . . , and in the event of such further charge, the defendant or his counsel shall have the right to present objections in the same manner as is prescribed in Article 36.15."[4] TEX. CODE CRIM. PROC. ANN. art. 36.16. Furthermore, the trial court's failure "to give the defendant or his counsel a reasonable time to examine the charge and specify the ground of objection shall be subject to review . . . in the appellate court." *Id*.

The Texas Court of Criminal Appeals has held the trial court has the right to correct a charge before the verdict once it finds the charge is erroneous as submitted to the jury. *Matthews v. State*, No. 13-03-245-CR, 2004 WL 5050455, at *1 (Tex.App.—Corpus Christi July 1, 2004, no pet.)(mem. op., not designated for publication). The Court of Criminal Appeals also established

---

[4] Before the court reads the charge to the jury, Article 36.15 requires affording counsel on both sides reasonable time to examine the charge and present written instructions, and by special exception, the defendant may call the court's attention to charge error—including omissions. *See* TEX. CODE CRIM. PROC. ANN. art. 36.15. The court has discretion to give or refuse these charges. *Id*.

13

that "a court's amending [of its] charge in order to correctly state the law" does not constitute reversible error. *Id*. (citing *Chambers v. State*, 379 S.W.2d 907, 908 (Tex.Crim.App.1964)).

## B. Issue One Analysis

In her first issue, Martinez claims trial court error for not being afforded the opportunity to examine and object to the supplemented instruction in violation of Articles 36.15 and 36.16. TEX. CODE CRIM. PROC. ANN. arts. 36.15, 36.16. The charge, as originally submitted to the jury, included the element "recklessly," but it did not define the term.

The record is silent as to whether defense counsel was afforded an opportunity to review or object to the charge as supplemented. The record includes: both parties resting their cases, the court's reading of the original charge to the jury, both parties' closing arguments, followed by the jury's immediate excusal to deliberate, the jury's note requesting the definition of "recklessly," submission of the jury request, and reading of the verdict. Although we cannot definitively ascertain from the record whether defense counsel was afforded an opportunity to review the supplemented charge, we nonetheless find no resulting harm even if no such opportunity was extended.

The trial court instructed the jury without objection, in relevant part, as follows:

> A person commits an offense if she intentionally or knowingly or recklessly fails unreasonably to provide necessary food, water, care, or shelter for an animal in the person's custody.
>
> . . .
>
> A person acts intentionally, or with intent, with respect to the nature of her conduct or a result of her conduct when it is her conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly, or with knowledge, with respect to the nature of her conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist. A person acts knowingly or

14

with knowledge with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result.

The jury's note to the trial court requested, "Can we get the court definition of recklessly?"

The trial court responded, and the supplemented charge submitted to the jury reads as follows:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

The definition of the culpable mental state of "recklessly," as provided to the jury, is taken verbatim from the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 6.03(c).

Pursuant to the *Almanza* standard, the first step is determining whether charge error exists. *Almanza*, 686 S.W.2d at 174. This case presents a unique situation because it is not the *substance* of the charge Martinez contests, but rather, the *procedure* by which the charge was supplemented. Martinez argues the trial court's failure to afford her the opportunity to examine and object to the supplemented charge constitutes error. Article 36.16 states, "[t]he failure of the court to give the defendant or his counsel a reasonable time to examine the charge and specify the ground of objection shall be subject to review either in the trial court or in the appellate court." TEX. CODE CRIM. PROC. ANN. art. 36.16. Because we cannot conclude from our record whether an opportunity was afforded to defense counsel, we assume without deciding that error occurred.

Having assumed error, the second step is to determine whether the error resulted in actual harm to Martinez. *Almanza*, 686 S.W.2d at 174. Reversal is required if the error is "'calculated to injure the rights of defendant,' which means no more than that there must be *some* harm to the accused from the error." *Id*. at 171.

15

Although the trial court erred by not extending defense counsel the opportunity to examine and object to the supplemented charge, Martinez must still demonstrate actual resulting harm by that error. Martinez has not met her burden of showing the error deprived her of a fair and impartial trial. Martinez concedes the trial court "properly amended the charge" by providing the "culpable mental state definition of recklessly as defined in TEX. PENAL CODE ANN. § 6.03(c)." The State argues it is uncontested that the *substance* of the supplemental instruction was correct. We agree. As for the *process* by which the charge was supplemented, any objection defense counsel would have made, had the opportunity been afforded, would have been correctly overruled. As established above, and to reiterate, the trial court supplemented the charge with the correct statutory definition of "recklessly." *See* TEX. PENAL CODE ANN. § 6.03(c). It is proper for a court to supplement a charge after deliberations have begun if the supplementation is a correct statement of the law. *See Dusek v. State*, 978 S.W.2d 129, 136-37 (Tex.App.—Austin 1998, pet. ref'd) (finding no error where the trial court supplemented the charge with a correct statement of the law after deliberations had begun and over objection). In *Roberson v. State*—a capital murder case— the jury, by note, requested a complete definition of "burglary" from the penal code. 113 S.W.3d 381, 383 (Tex.App.—Fort Worth 2003, pet. ref'd). Convinced it had given an erroneous charge, the trial court modified the charge to include the complete definition. *Id*. The Fort Worth Court of Appeals held the trial court did not violate Article 36.16 in submitting a supplemental charge that contained a proper statement of the law. *Id*. at 385. The Court of Criminal Appeals has also "consistently held that a trial court may withdraw and correct its charge if convinced an erroneous charge has been given." *Dusek*, 978 S.W.2d at 136-37 (quoting *Smith v. State*, 898 S.W.2d 838, 854-55 (Tex.Crim.App. 1995)).

Moreover, Article 36.16 "governs supplemental jury charges, and it does not, in all instances, prevent the trial court from submitting a supplemental charge after deliberations have begun." *Roberson*, 113 S.W.3d at 384. A supplemental charge may be given when the prerequisites of Article 36.16 are met—such as supplementation by request of the jury, which is the case here. *See id*. at 384 (citing *Garza v. State*, 55 S.W.3d 74, 77 (Tex.App.—Corpus Christi, 2001, pet. ref'd)). In the present case, the State argues the supplementation "permitted the jury to render an informed decision based on a complete instruction of the relevant law, which can hardly be deemed unfair or an action calculated to injure Martinez's rights." We agree. Because Martinez has conceded the trial court properly corrected the charge, and because any objection lodged by defense counsel would have been correctly overruled, Martinez has failed to establish any harm.

In light of the entire jury charge, the state of the evidence, and any other relevant information in the record, we conclude the error did not injure Martinez's rights or deprive her of a fair and impartial trial.

Martinez's first issue is overruled.

## C.  Issue Two Analysis

In Issue Two, Martinez claims the trial court's failure to afford her the opportunity to examine and object to the supplemented instruction precluded defense counsel from conducting additional closing argument to the jury in violation of both Article 36.16 of the Texas Code of Criminal Procedure and her right to effective assistance of counsel as guaranteed by the Sixth Amendment of the U.S. Constitution.

A trial court's disregard of Article 36.16 constitutes error, but as analyzed above, Martinez has failed to establish actual resulting harm. This sub-issue is overruled. In some instances, a trial

17

court's failure to comply with Article 36.16 can also amount to a Sixth Amendment violation. *See Murray v. State*, 857 S.W.2d 806, 812 (Tex.App.—Fort Worth 1993, pet. ref'd)(holding the trial "court's late supplementation had an effect tantamount to denying jury argument; thereby violating [defendant's] Sixth Amendment right to effective assistance of counsel").

Martinez specifically asserts that without the definition of "recklessly," the State was able to argue that Martinez's "carelessness and neglect" was sufficient for conviction. In other words, Martinez asserts defense counsel was unable to argue that the State was required to prove the culpable mental state of "recklessly," at minimum. This is inaccurate. To the contrary, the record shows the omission of the definition and the procedure by which the charge was supplemented did not impede defense counsel's ability to argue the element of "recklessly." Defense counsel began his opening argument by asserting the culpable mental states required to convict Martinez of the charged offense: "*Intentionally, knowingly or recklessly*, unreasonably providing food, water and care." The State also repeated the culpable mental states in its closing argument by explaining to the jury: "So the next is whether it's *intentional, knowing or reckless*. Now this goes to her state of mind." During closing, defense counsel again emphasized all three mental culpable states, stating "ask yourself why we're even here when [Martinez] herself and Arturo and the witnesses all testified -- [Martinez] and Arturo, specifically -- that they would never hurt animals. That she would never do anything to do that, *intentionally, knowingly or recklessly*." In his closing, defense counsel yet again claimed the evidence failed to prove Martinez committed the offense because Martinez provided the canines with "love" and "would never hurt animals . . . *intentionally, knowingly or recklessly*." Omission of the definition in the charge did not repudiate defense counsel's arguments at trial, as Martinez would like us to conclude, because it is clear defense

18

counsel argued the culpable mental state of "recklessly."

For actual harm to be established, the charge error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Cosio v. State*, 353 S.W.3d 766, 776–77 (Tex.Crim.App. 2011). Although we recognize the culpable mental state of "recklessly" goes to the very basis of the case, the original charge included all three mental culpable states—including "recklessly"—and contained definitions of "intentionally" and "knowingly." The supplemented charge merely added the statutory definition of "recklessly" per the jury's request. It set forth the law applicable to the case; it was not an improper comment as to the weight of the evidence or a summarization of the testimony, it did not discuss the facts, or use any response calculated to arouse the sympathy or excite the passions of the jury. *See Kirchner*, 2014 WL 2090032, at *6. Moreover, defense counsel's inability to object to the supplemented charge would have resulted in essentially a fruitless objection and did not cause ineffective assistance of counsel. The State supports this contention by maintaining "[c]ourts have consistently held that deficient performance and prejudice under the *Strickland v. Washington* standard are not shown where counsel's supposed deficient or prejudicial failure to object would have resulted in a fruitless objection" because it would have been correctly overruled. *See Weinn v. State*, 281 S.W.3d 633, 639-42 (Tex.App.—Amarillo 2009), *aff'd*, 326 S.W.3d 189 (Tex.Crim.App. 2010); *Brooks v. State*, 799 S.W.2d 435, 438-39 (Tex.App.—El Paso 1990, no pet.). We agree.

The record shows both parties argued the contested element, and the supplemented charge provided the jury with an accurate statement of the law to assist in rendering an informed verdict. We cannot conclude defense counsel was precluded from arguing the culpable mental state of "recklessly" when the record shows he did in fact argue the contested element. The charge error,

which was corrected by supplementation, did not affect the very basis of the case, deprive Martinez of a valuable right, or vitally affect a defensive theory. *See Cosio*, 353 S.W.3d at 776-77.

We find Martinez suffered no harm from the charge error, and her right to effective assistance of counsel as guaranteed by the Sixth Amendment of the U.S. Constitution was not violated.

Martinez's second issue is overruled.

## V. CONCLUSION

For all these reasons, we affirm.

GINA M. PALAFOX, Justice

March 31, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

20