

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0257-21

**DANNA PRESLEY CYR, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE ELEVENTH COURT OF APPEALS
## GAINES COUNTY

McClure, J., delivered the opinion of the Court, in which Keller, P.J., Hervey, Richardson, and Newell, JJ., joined. Keel, J., concurred. Yeary, J., filed a dissenting opinion. Walker and Slaughter, JJ., dissented without opinion.

### O P I N I O N

In late June 2013, Appellant and her husband, Justin Cyr, took their four-month-old child, J.D., to the emergency room in Lubbock. Upon their arrival, medical staff quickly discovered J.D. was suffering from life-threatening brain

hemorrhaging. Physicians were able to save J.D.'s life, but the bleeding resulted in permanent physical and cognitive dysfunction. The cause of the child's injuries is uncontroverted; J.D. was violently assaulted by her father Justin Cyr. Justin was convicted separately for injury to a child and sentenced to life imprisonment. His conviction is not at issue.

Appellant was indicted, convicted, and sentenced to fifteen years' imprisonment for reckless injury to a child by omission. The State sought its general verdict under two theories: (1) Appellant failed to protect J.D. from Justin, or (2) Appellant failed to seek reasonable medical care despite her duty to act as J.D.'s parent.

We granted discretionary review to decide whether Appellant was entitled to a jury instruction under Texas Penal Code § 6.04(a)'s concurrent causation provision for acts "clearly insufficient" to cause the proscribed harm. TEX. PENAL CODE § 6.04. Because we find concurrent causation was not raised by the evidence presented at trial under Texas Penal Code § 22.04(a) and § 6.04(a), we reverse the judgment of the Eleventh Court of Appeals and affirm the judgment of the trial court.

## BACKGROUND

On June 29, 2013, while Appellant was in the kitchen of the family home in Denver City, Appellant's husband Justin Cyr began to "choke" and shout expletives at J.D in the living room. The couple's older child, E.P., who was five years old at

the time, testified at trial that Appellant subsequently entered the living room and instructed Justin to "stop hurting the baby."[1] Later that night and into the early morning, Appellant noticed J.D. was experiencing seizure-like symptoms and called Justin's mother who was a retired nurse. Justin's mother advised Appellant to give J.D. Tylenol and monitor the child. Appellant followed that advice. The next day, J.D. began to experience seizure-like symptoms again and the couple decided to take the child to Covenant Hospital in Lubbock, rather than their local hospital just six miles away. J.D. continued to experience the same symptoms throughout the hour-long drive to Lubbock. Although Appellant and Justin originally told investigators they drove to Lubbock because Justin distrusted physicians in Denver City, later testimony from Appellant's mother revealed the decision to drive to Lubbock was made to avoid Child Protective Services (CPS).

When Appellant, Justin, and J.D. arrived at the hospital in Lubbock, medical personnel quickly realized the child's injuries resulted from non-accidental abuse. The hospital contacted CPS and CPS coordinated its investigation with the Lubbock Police Department.

---

[1] E.P. testified that Justin had choked the baby on other occasions. Additionally, the couple's eldest child B.P. testified that she previously witnessed Justin harm J.D. on numerous occasions when J.D. cried, but was with her maternal grandparents on the date this particular incident occurred.

Appellant and Justin were approached by Chief Deputy Patrick Kissick at the hospital and asked about the circumstances of J.D.'s injury. Both responded that the child began to experience the seizure-like symptoms after a "hard bowel movement." Neither Appellant nor Justin notified Deputy Kissick of the abuse, prior accidents, falls, or the "popping sound" the child made when she was picked up.[2]

Pediatric ophthalmologist Dr. Curt Cockings and pediatrician Dr. Patty Patterson testified to the severity of the force required to cause such extensive injuries to J.D and the mechanism of injury. They found that J.D. was shaken powerfully enough that her brain struck the inside of her skull, causing extensive subdural hemorrhaging, retinal hemorrhaging, brain swelling, and retinal detachment. Dr. Cockings concluded the injuries would not have been caused by a "hard bowel movement," a short fall, being squeezed, or being struck. Dr. Patterson further concluded that immediate medical treatment could have reduced the extent of the damage.[3]

---

[2] Medical professionals at Covenant Hospital also discovered the child had two broken ribs and estimated that injury to be about two weeks old at the time she was brought in.

[3] Dr. Pankratz, testifying to J.D.'s ongoing medical treatment, estimated J.D.'s development including speech and fine motor skills to be that of about an 18-month-old to two-year-old standard despite her chronological age at the time of trial being five-and-a-half years. She is not expected to progress further than the two-and-a-half-year developmental standard. She likely will never develop even rudimentary skills such as using the bathroom unassisted or communicating effectively with caregivers. She has been left legally blind and her life expectancy has been dramatically reduced. A substantial portion of J.D.'s brain is "dead," and will never recover.

Based on the medical findings, Deputy Kissick obtained an arrest warrant for both parents. Justin and Appellant were arrested on July 2, 2013. In an interview after her arrest, Appellant gave a brief statement to police indicating she was unaware of Justin's prior domestic violence charges or what would have caused J.D.'s injuries other than the constipation she previously discussed with Deputy Kissick. Appellant was charged under Texas Penal Code § 22.04 by two paragraphs. In the first paragraph, the State alleged Appellant "recklessly, by omission, cause[d] serious bodily injury" to J.D. when she failed to protect the child from being "grabbed, squeezed or shaken by Justin Cyr, or by failing to seek reasonable medical attention" where she had a duty to protect and provide medical care. The second paragraph differed solely with respect to Justin's actions, alleging Appellant failed to protect J.D. from "being struck against a hard surface by Justin," and subsequently failed to provide medical care.

At trial, Appellant's defensive theory pointed a finger at Justin, arguing Appellant should not be held liable for his actions because, after all, J.D.'s injury would not have occurred in the absence of Justin's violent abuse. Appellant further argued that her failure to procure medical treatment did not worsen J.D.'s injury, nor was Appellant aware of the risk of injury to the child by virtue of Justin's presence in the home.

Based in part on her argument that she should not be held liable for her failure to act, Appellant requested a jury instruction on concurrent causation. The trial court denied the request and, with respect to causation, required the jury to find: "…by this failure to protect [J.D.] or by this failure to provide medical care to [J.D.] [Appellant] caused bodily injury to [J.D.]."

Appellant was convicted by a jury and sentenced to fifteen years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

## DIRECT APPEAL

On direct appeal, Appellant raised two grounds for review: (1) the trial court erred when it refused to instruct the jury on concurrent causation, and (2) the evidence at trial was legally insufficient to support a conviction under § 22.04 of the Texas Penal Code.

With respect to her first issue, Appellant argued concurrent causation is a defensive issue raised by the facts of this case, entitling her to a jury instruction. She argued, with respect to her failure to prevent the child's injuries, that she was neither present nor aware of Justin's conduct towards the child for purposes of preventing his harmful act. In response to the State's theory that Appellant failed to provide adequate medical care, Appellant argued there was some evidence in the record indicating the delay in treatment had no adverse effect on J.D.'s injuries. She

concluded that her burden to provide evidence that her acts alone were clearly insufficient to cause the harm was satisfied, that Justin's act alone was clearly sufficient alone to cause the harm, and therefore the trial court erroneously refused her request for a jury instruction on concurrent causation.

The Eleventh Court of Appeals agreed and held that Appellant's entitlement to an instruction on the issue was predicated on Appellant's ability to produce some evidence that her actions, standing alone, were "clearly insufficient" to produce the harm to J.D. *Cyr v. State*, 630 S.W.3d 380, 388 (Tex. App.—Eastland 2021). Relying heavily on its decision in *Wright*, the court of appeals found "*some* evidence" Appellant's conduct did not cause aggravation of J.D.'s injury and was otherwise insufficient to cause the resulting injury. *Id.* (emphasis in original). It found Appellant entitled to an instruction on concurrent causation. *Id.*; *Wright v. State*, 494 S.W.3d 352 (Tex. App.—Eastland 2015, pet. ref'd) (finding failure to obtain medical care was a concurrent cause with preceding sexual abuse). Under a "some harm" analysis, the jury's inability to consider the issue of concurrent causation despite the defense's theory of the case, which centered on Justin's culpability improperly denied Appellant presentation of her theory of the case. *Cyr*, 630 S.W.3d at 388. The appellate court thus sustained Appellant's first issue, reversing the judgment of the trial court.

In addressing Appellant's second issue, and despite having found "some evidence" supporting Appellant's argument that her conduct alone would have been "clearly insufficient" to cause the harm to J.D., the court of appeals found the evidence presented at trial sufficient to permit a jury to find both Appellant's omissions caused serious bodily injury to J.D. beyond a reasonable doubt. *Id.* at 390.

### STATE'S PETITION AND APPELLANT'S RESPONSE

The State petitioned this Court, arguing concurrent causation is wholly inapplicable to omission offenses under § 22.04 or otherwise is not raised by the facts of this case.[4] TEX. PENAL CODE § 22.04. The State complains that a concurrent causation instruction, if offered in omission cases, would operate to absolve Appellant of liability by virtue of the mere fact her crime was an omission rather than an act. In response, Appellant argues omission offenses are appropriately addressed by the reasoning contained in § 6.04 on concurrent causation, as it prevents a criminal defendant from facing liability where there are several actors and the defendant's omissions are "clearly insufficient" to result in the harm. TEX. PENAL CODE § 6.04(a). Because Appellant points to no evidence relevant to a concurrent-causation instruction and instead argues alternative cause, we reverse the judgment of the court of appeals and affirm the judgment of the lower court.

---

[4] Evidentiary sufficiency is not at issue in our review.

# LAW

## *Standard of Review*

We review jury charge error under a two-pronged test, by looking first to whether the charge is erroneous. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). Second, we ask whether Appellant was harmed by the error. *Wooten*, 400 S.W.3d at 606; *see Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). Where there was a timely objection, Appellant must show she suffered "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); Tex. Code Crim. Proc. § 36.19. Where there was no timely objection, Appellant must show she suffered egregious harm, which we determine by considering the jury charge as a whole, the issues raised by the parties, the evidence at trial, and "anything else in the record that informs our analysis." *Lozano v. State*, 636 S.W.3d 25, 29 (Tex. Crim. App. 2021).

The State contends Appellant is not entitled to an instruction on concurrent causation by the very nature of injury-to-a-child-by-omission offenses under Texas Penal Code § 22.04. Inclusion of an instruction on the defensive issue requires the defendant to demonstrate that there is evidence supporting it. *See Hughes v. State*, 897 S.W.2d 285, 297 (Tex. Crim. App. 1994) (citing *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986)); *see Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007) ("Whether a defense is supported by the evidence is a sufficiency

question reviewable on appeal as a question of law."); *see also Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984) ("The issue before this Court is not the truth of appellant's testimony, for that is for the jury.").

### *Injury to a child by omission, § 22.04*

In contrast to the majority of crimes which proscribe an action, an omission is punished only when there is "a corresponding duty to act." *Billingslea v. State*, 780 S.W.2d 271, 274 (Tex. Crim. App. 1989); *see Florio v. State*, 784 S.W.2d 415 (Tex. Crim. App. 1990). Chapter 6 of the Texas Penal Code generally denounces criminal omissions, permitting them only where "a law…provides that the omission is an offense or otherwise provides that [an individual] has a duty to perform the act." TEX. PENAL CODE § 6.01(c).  Section 22.04 of the Texas Penal Code is one of those provisions.   By its terms, § 22.04 punishes an individual who "intentionally, knowingly, or recklessly by omission, causes to a child…serious bodily injury." TEX. PENAL CODE § 22.04(a). Injury-to-a-child offenses under § 22.04 are "result-oriented" and "requir[e] a mental state that relates not to the specific conduct, but to the result of that conduct." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)).

Thus, to prove injury to a child by omission under § 22.04, the State must show a person: (1) "intentionally, knowingly, or recklessly," (2) "by omission," (3)

"cause[d] to a child," (4) "serious bodily injury; serious mental deficiency, impairment, or injury; or bodily injury." TEX. PENAL CODE § 22.04(a).

Appellant does not challenge the fact that Justin inflicted serious injury on J.D. which caused her to suffer irreparable brain damage. Neither does she challenge the fact she failed to prevent it from occurring and failed to provide reasonable medical care after the fact. Nor does Appellant contest her duty to act under § 22.04(b) as J.D.'s parent. Parents stand in a special relationship to their children and have statutory duties including providing their children with food, shelter, or other necessities including medical care and protection from harm. TEX. FAM. CODE § 151.001(a)(2–3). The sole remaining issue is Appellant's entitlement to a jury instruction on concurrent causation.

### *Concurrent Causation*

The scope of causation under the Texas Penal Code is broad, allowing courts to find causation where "the result would not have occurred but for [the] conduct, operating either alone or concurrently with another cause." TEX. PENAL CODE § 6.04(a).

The breadth of causation under § 6.04 results from the differences between civil and criminal law. Unlike tort law in which causation functions as a litmus test for fairness, causation in criminal law is limited by the culpability requirement. JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 186–87 (8th ed. 2018) ("[T]he

Model Penal Code treats but-for causation as the exclusive meaning of 'causation' in the criminal law. The Code treats matters of 'proximate causation' as issues relating instead to the actor's culpability."). We have nonetheless recognized that such foreseeability limitations exist. *Williams v. State*, 235 S.W.3d 742, 755, 764 (Tex. Crim. App. 2007) ("The defendant's conduct must be a direct cause of the harm suffered.") ("Obviously some element of foreseeability limits criminal causation.").

Further evidencing § 6.04(a)'s breadth, an actor need not be the sole cause of the harm. Causation is established where the conduct of the defendant is the "but for" cause "operating alone or concurrently with another cause." TEX. PENAL CODE § 6.04(a); *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). "Another cause" is one in addition to the actor's conduct, "an agency in addition to the actor." *Robbins*, 717 S.W.2d at 351 n.2 (citing S. Searcy and J. Patterson, Practice Commentary, V.T.C.A. Penal Code, Sec. 6.04).

Where two or more causes satisfy "but for" causation, a criminal defendant remains liable if her conduct was either sufficient to have caused the result alone "regardless of the existence of a concurrent cause," or both causes "*together*" were sufficient to cause the result. *Robbins*, 717 S.W.2d at 351 (emphasis in original). An individual's guilt may not be premised on his conduct being a mere "contributing factor" without more. *Id.* To illustrate: Two arsonists each light fire to the same

house, one on the east side and one on the west side, both of which are independently sufficient to burn the house to the ground. Neither arsonist is entitled to an instruction on concurrent causation and both are criminally liable. [5] The same result is reached if both fires would independently be insufficient to burn the house to the ground, but the combined force of the east fire and the west fire causes such a result. Only where the east arsonist can produce evidence that his fire was clearly insufficient to burn the house to the ground, and the west arsonist's clearly sufficient acting alone, would the east arsonist be entitled to an instruction on concurrent causation and potentially escape liability for the full extent of the damage caused under concurrent causation.

Restated, § 6.04(a) entitles a defendant to an instruction on concurrent causation when she shows (1) "an agency in addition to the actor" was a "but for" cause of the result charged, and (2) some evidence demonstrates her conduct is "clearly insufficient" to cause the harm and the other, concurrent cause is clearly sufficient to cause the harm. TEX. PENAL CODE § 6.04(a); *Robbins*, 717 S.W.2d at 351 n.2 (citing S. Searcy and J. Patterson, Practice Commentary, V.T.C.A. Penal Code, Sec. 6.04); *Hughes v. State*, 897 S.W.2d 285, 297 (Tex. Crim. App. 1994).

Concurrent causation should not be confused with "alternative caus[ation]," however. *Barnette v. State*, 709 S.W.2d 650, 652 (Tex. Crim. App. 1986). Unlike

---

[5] David A. Fischer, *Causation in Fact in Omission Cases*, 1992 UTAH L. REV. 1335, 1336 (1992) (using a dwelling fire analogy to demonstrate concurrent causation principles).

concurrent causation, which alleges there was an "agency in addition to the actor" responsible in whole or in part for the harm, alternative cause is "an entirely different issue." *Robbins*, 717 S.W.2d at 351 n.2 (quoting S. Searcy and J. Patterson, Practice Commentary, V.T.C.A. Penal Code, Sec. 6.04) ("A concurrent cause is 'another cause' in addition to the actor's conduct, an "agency in addition to the actor."); *Barnette v. State*, 709 S.W.2d 650, 651 (Tex. Crim. App. 1986) ("It is doubtful whether that request was sufficient to alert the trial court to the need for a charge on 'alternative' cause, an entirely different issue."). Contrary to concurrent causation, which does not dispute the culpable act or mental state alleged by the State and merely blames another for the result, alternative causation "is simply a different version of the facts, one which negates at least one element of the State's case." *Barnette*, 709 S.W.2d at 652.

In *Barnette*, the defendant was tried on three counts: murder, reckless injury to a child, and negligent injury to a child after her infant son died when he was burned with hot water. At trial, Barnette argued that the child was left alone and caused his own injury by turning on the hot water faucet. This fact pattern was identical to the State's allegation of reckless injury to a child, however. As a result, we found no error in the trial court's "refus[al] to instruct the jury to find appellant not guilty if they found to be true facts that would prove her guilty of injury to a child." *Id.* at 651.

Here, Appellant was charged with one count of injury to a child by omission on two theories: (1) that she failed to protect J.D. from the harm caused by Justin, and (2) that she failed to provide reasonable medical care once the initial harm occurred. Both omissions were alleged to have caused or contributed to J.D.'s injuries, but the jury was permitted to decide guilt on either theory.

## ANALYSIS

### *Appellant was not entitled to a concurrent cause instruction regarding failure to protect*

Applying our framework to the instant case, we must first ask whether Appellant has shown a concurrent cause exists. TEX. PENAL CODE § 6.04(a). Here, Appellant argues that the evidence introduced at trial including her absence from the room where the injury occurred and the children's uncertainty about Appellant's awareness of Justin's prior abuse of J.D.[6] were facts demonstrating concurrent causation. These facts do not establish a concurrent cause, however, but are the very essence of the State's case. The State alleged that Appellant, aware of a risk of injury or harm, failed to protect J.D. from the thing likely to cause the harm. Appellant's contention that she was ignorant of the abuse on the date of the incident does nothing to controvert causality, and only points to *some* evidence, which the jury did not find

---

[6] Evidence introduced at trial also revealed Justin's criminal record contained other domestic-violence offenses, including violence against young children.

persuasive, that she did not possess the requisite mental state in order to be found guilty of reckless injury to a child. Where she contests an essential element of the State's case and does not raise facts sufficient for a concurrent cause instruction, her argument falls under *Barnette*'s alternative-causation framework.

The trial court did not err by refusing to give an instruction which would have asked the jury to acquit Appellant if they found one of the essential elements of the State's case, that Justin did in fact injure the child when Appellant failed to protect her. *See Barnette*, 709 S.W.2d at 652. Thus, we find Appellant is not arguing concurrent causation, but only alternative causation under the guise of concurrent causation. The jury charge clearly demanded a contrary result if it found Appellant unaware of the circumstances creating a risk of harm to J.D. After all, the very essence of a recklessness offense is Appellant's conscious appreciation of a substantial risk of harm. TEX. PENAL CODE § 6.03(c).

Factually, the harm to J.D. would not have occurred, if, instead of asking that Justin "stop hurting the baby," Appellant had removed the children from Justin's presence, alerted law enforcement, or otherwise taken action to prevent harm to J.D.[7] "But for" Appellant's failure to act on her duty to protect her child, J.D. would not have suffered such horrific abuse. Appellant concedes such a failure to protect,

---

[7] The sufficiency of the evidence as to each of these theories was upheld on appeal, so we need not address them. *Cyr*, 630 S.W.3d at 380.

asking only whether she produced some evidence that Justin's conduct was a concurrent cause which was independently, sufficiently harmful by virtue of evidence indicating he abused the child in the living room while she was in the kitchen and ambiguous evidence regarding whether the children notified Appellant of the abuse. Her presence in the kitchen is irrelevant to this question; Appellant's awareness of the ongoing abuse was provided for in the nature of the offense and is unrelated to causality insofar as it merely contests mental culpability. To hold otherwise would undermine the intention of the legislature, permitting criminal defendants charged with omission to blame another person, thing, or condition, and leaving Texas Penal Code § 22.04 and § 6.04 bereft of their plain meaning.

Appellant's position readily lends itself to an analogy with our decision in *Williams*. *Williams v. State*, 235 S.W.3d 742 (Tex. Crim. App. 2007). In *Williams*, we expressed distaste for expansive views on causation, fearing that courts would hold parents liable for any action which led to the child's harm including "meeting [the other parent], having an intimate relationship with him, bearing [the children], . . .and so forth." *Id.* at 764. We then recognized "some element of foreseeability limits criminal causation just as it limits principles of civil 'proximate causation.'" *Id.* (quoting AMERICAN LAW INSTITUTE, MODEL PENAL CODE § 2.03, Explanatory Note at 265 n.24). Core tenets of civil proximate cause hold a tortfeasor liable for his acts or omissions when "criminal conduct is a foreseeable result of such

negligence." *See Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (holding causality often flows from a foreseeability inquiry).

As stressed above, the jury in this case was required to find Justin's actions a foreseeable consequence of Appellant's omission by virtue of the definition of recklessness. We recognized the same connection in *Williams*, which primarily centered on Williams's culpability with respect to the accident injuring the children, rather than whether her act of leaving the children with her boyfriend factually caused the harm to the children. *Williams*, 235 S.W.3d at 742 (emphasis added). No party to the *Williams* case contested the fact that Williams's actions in leaving the children with her boyfriend factually caused the harm. *Id.* at 764. The same is true in this case; Appellant's failure to remove the children from a known danger allowed harm to occur.

The distinction is evident: while Williams could not have foreseen the series of unfortunate events which led to a dwelling fire killing her children because there was no evidence suggesting he was "an incompetent caretaker," an avalanche of evidence pointed to Appellant's knowledge of Justin's ongoing abuse of J.D. when he was present in the home.[8] *Id.* at 765. Foreseeability is an implicit requirement for

---

[8] Specifically:
- E.P. testified that Justin violently choked J.D. and shouted expletives at the child. She testified that the home was an open-concept trailer in which such disturbances could be heard throughout the home. E.P. further testified that Appellant told Justin to "stop hurting the baby," on the night J.D. was injured and that the violence had occurred before.

causation that criminal law addresses through culpability. *See id.* at 751 ("Recklessness requires the defendant to actually foresee the risk involved and consciously decide to ignore it."). Thus, evidence contesting such foreseeability, as in *Williams*, is evidence refuting mens rea. Foreseeability in the instant case was proven by virtue of the jury's finding of recklessness, and the sufficiency of the evidence on that point, having been upheld by the court of appeals, is not before us. *Cyr*, 630 S.W.3d at 380. When the State proved the necessary mens rea, it likewise proved "proximate causation" as that term is used in the civil counterpart to criminal causation. *Henderson v. Kibbe*, 431 U.S. 145, 156 (1977) ("A person who is 'aware of and consciously disregards' a substantial risk must also foresee the ultimate harm that the risk entails."); JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 186–87 (8th ed. 2018) ("[T]he Model Penal Code treats but-for causation as the exclusive

---

- B.P. testified she observed violence between Justin and the baby on numerous occasions, although she was not present on the night in question. B.P. also testified that the home was an open concept in which noise could easily be detected.
- Medical experts testified that the child had old injuries including broken ribs which appeared to be about two weeks old and that J.D. would have been exhibiting seizure-like symptoms immediately after she suffered the head injury.
- Appellant admitted to law enforcement during an interview that she wanted to take J.D. to the hospital on the night the injury occurred.
- Appellant's mother Deborah testified that on the morning after the injuries occurred, Appellant called her and indicated J.D. had suffered a seizure. Deborah told Appellant to take J.D. to the hospital in Denver City immediately, but Appellant decided to take J.D. to the hospital in Lubbock instead, even though that hospital was seventy-five miles away.
- Deborah also reported that Appellant revealed to her the real decision to take J.D. to Lubbock instead of Denver City: Justin wanted to avoid CPS.

*Cyr*, 630 S.W.3d at 383–85, 390.

meaning of 'causation' in the criminal law. The Code treats matters of 'proximate causation' as issues relating instead to the actor's culpability.").

Further, had Williams alleged concurrent causation principles absolved her of liability by virtue of her boyfriend's simultaneous acts in inadvertently burning the home, this Court would be faced with an identical dilemma. Thus, the confusion confronted in this case extends not only to omission offenses but likewise appears with respect to a charge involving an affirmative act. The State's contention that the conflict in this case is confined to omission cases is therefore unfounded.

Our conclusion likewise comports with the reasoning of the American Law Institute's Model Penal Code, on which the Texas Penal Code is based. Under the Model Penal Code, defendants may remain independently liable for their harmful omissions even where the injury occurs vis-à-vis a third party. JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 186 (8th ed. 2018) (where a father fails to protect his child from a violent stranger, the stranger remains liable despite the father's failure to protect and the father remains liable despite the stranger's assault "on the basis of omission principles").

Finally, a concurrent causation jury instruction would only serve to confuse the jury. Trusting a jury to reconcile factual causation and concurrent causation in a case where the evidence does not support concurrent causes would improperly ask the jury the same questions the Eleventh Court of Appeals has apparently designated

"too difficult for lawyers or even for philosophers." *Cyr*, 630 S.W.3d at 386 (quoting *Westbrook v. State*, 697 S.W.2d 791, 793 (Tex. App.—Dallas 1985, pet. ref'd)).

As a result, we find concurrent causation inapplicable to Appellant's failure to prevent J.D.'s injury, as Appellant's arguments contest culpability, rather than allege concurrent causes.

***Appellant was not entitled to a concurrent cause instruction regarding failure to provide reasonable medical care***

Likewise, Appellant fails to demonstrate that Justin's act was a concurrent cause of her failure to provide medical care for J.D.[9] Section 22.04(a) is a "result of conduct" offense; where the allegation is a failure to provide medical care, the result must flow from that conduct. *See Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985) (noting that the injury to a child statute is a result-oriented offense). As we noted in *Jefferson*, we do not require jury unanimity regarding the conduct constituting the "means" in injury to a child cases under § 22.04 where the injury is nevertheless caused by such act or omission. *Jefferson v. State*, 189 S.W.3d 305, 311–12 (Tex. Crim. App. 2006). Both means alleged, however, must satisfy the "but-for" causal connection with the result. *See id.* at 12 ("A person commits the offense

---

[9] The Eleventh Court of Appeals also found evidence that Appellant's failure to provide medical care aggravated or worsened J.D.'s injury. *Cyr*, 630 S.W.3d at 388. The issue is not before us.

of injury to a child if (with a particular culpable mental state) he causes serious bodily injury to a child by 'act or omission.'").

Here, the State alleged that both Appellant's failure to prevent injury and failure to provide medical care caused the child's injuries. Both must have been a "but-for" cause of the resulting harm, and both are analyzed separately for purposes of concurrent causation. The fact Justin injured the child at the same time Appellant failed to prevent the injury does nothing to controvert the causal relationship between Appellant's failure to provide medical care and the injury.

Further, because injury-to-a-child offenses are result-oriented, § 22.04 requires the State to prove not only that an individual failed to provide reasonable medical care, but that doing so caused a separate injury, even if the separate injury was a worsening of the child's condition. *Dusek v. State*, 978 S.W.2d 129, 133 (Tex. App.—Austin 1998, pet. ref'd) ("[I]t [is] necessary to prove that [the child] suffered a serious bodily injury *because* appellant failed to provide him medical care."). Therefore, any causal dispute regarding the source of J.D.'s initial injury necessarily would not apply to the subsequent failure to provide reasonable medical care. The jury charge correctly required the jury to find a causal relationship between both proposed means and the resulting, separate injuries.

One concurrent cause present in this case which Appellant could have raised but did not, centers on Justin's failure to provide medical care following the initial

injury. Assuming such a concurrent omission satisfies the first prong of our test under § 6.04(a), it fails the second requirement which would require Appellant to show that the concurrent omission was clearly sufficient alone to cause the additional injury, while hers was clearly insufficient. TEX. PENAL CODE § 6.04(a). Thus, such an example would merely be a concurrent cause that would not entitle Appellant to an instruction under § 6.04.

One can imagine alternate scenarios concurrently causing delay in the provision of medical care, which are neither argued nor present on these facts. The above is merely a non-exclusive example. Nothing in this opinion should be construed to hold that a concurrent cause must be identical to the offensive conduct. As outlined above, to show entitlement to an instruction on concurrent causation, a defendant need only show (1) an "agency in addition to the actor" "operat[ed]. . . concurrently" with the offensive conduct, and (2) on its own, was "clearly sufficient" to produce the result, while the defendant's conduct was insufficient. TEX. PENAL CODE § 6.04(a). *Robbins*, 717 S.W.2d at 351 n.2 (citing S. Searcy and J. Patterson, Practice Commentary, V.T.C.A. Penal Code, Sec. 6.04).

Appellant has not satisfied this test. She points to no evidence suggesting a concurrent cause contributed to aggravation of J.D.'s initial injuries, or that a concurrent cause was otherwise responsible for Appellant's delay in obtaining medical care. Appellant misunderstands the result to which the concurrent cause

must apply and points us to no evidence suggesting the delay in obtaining medical care was due to some other "agency" for purposes of causation under § 6.04.

**CONCLUSION**

Section 6.04(a) prescribes a narrow set of circumstances in which a defendant would be entitled to a concurrent causation instruction, in that is confined to those circumstances in which "the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE § 6.04(a). Concurrent causation should not be over construed to encompass culpability disputes appropriately addressed by the essential elements of the crime. *Barnette*, 709 S.W.2d at 652. While Appellant characterizes her argument as one involving concurrent causation, the evidence she produced at trial only provided some evidence contesting her awareness of Justin's abuse, rather than some evidence the harm would inevitably have occurred despite performance of her statutory duty to protect J.D. As we made clear, the jury has previously decided, and the court of appeals affirmed, the sufficiency of the evidence as to Appellant's reckless mental state. *Cyr*, 630 S.W.3d at 388.

Further, and because this Court is unaware of which theory the jury chose to support its general guilty verdict, Appellant's failure to provide reasonable medical care does not demonstrate a concurrent cause. Because the delay in providing medical care must also cause injury, even where that injury was a worsening of the

child's current condition, the question of causality for that additional injury was necessarily separate from the initial injury. *See Dusek*, 978 S.W.2d at 133. Thus, Appellant is not entitled to a concurrent causation instruction on either theory raised at trial. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Delivered: December 21, 2022

Publish